THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK MAIL AND NEWSPAPER TRANSPORTATION COMPANY, Appellant, *v.* CHARLES H. GAUS, as Comptroller of the State of New York, Respondent.

Tax — franchise tax against corporations which pay no dividends — tax must be assessed upon market value, not par value, of its capital stock.

The Franchise Tax Law as it stood in 1908 and as it now stands, cannot be held to authorize the franchise tax of three-quarters of a mill upon the *par value* of capital stock employed in this state as against corporations which pay no dividends or whose assets do not exceed their liabilities exclusive of capital stock, or whose stock has not been sold within the year at an average price equal to or exceeding its par value. but such capital stock must be appraised for taxation at its actual value. (Following *People ex rel. Fifth Ave. Building Co.* v. *Williams*, 198 N. Y. 238.)

Section 190 of the former Tax Law, as amended by chapter 474 of the Laws of 1906, in force during the year 1907, did not affect non-dividend paying corporations. As to such corporations the provisions of section 182 made the actual value of the capital stock and not its par value the basis of assessment for the franchise tax during that year.

*People ex rel. N. Y. M. & N. T. Co.* v. *Gaus*, 134 App. Div. 742, reversed.

(Argued February 10, 1910; decided April 5, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 12, 1909, which modified and confirmed as modified a determination of the state comptroller assessing a franchise tax against the relator for the years 1907 and 1908.

The facts, so far as material, are stated in the opinion.

*Arthur O. Townsend* for appellant.   The policy of New York state in taxing corporations for state purposes has always been to base the tax on the actual value and condition of the company.  (*N. Y. & E. R. F. Co.* v. *Roberts,* 168 N. Y. 14.)

*R. Floyd Clarke* for Uvalde Asphalt Paving Company, intervening.   A domestic corporation which declared no dividend during the years ending October 31, 1907 and 1908, and so reported to the comptroller with the other particulars required under sections 182 and 190, now 193, of the Franchise Tax Law, should not be assessed, on the basis of three-fourths of a mill on the par value of the capital stock issued, but on the appraised value of its assets under section 190, now 193, of such law.  (*People ex rel. N. Y. & E. R. F. Co.* v. *Roberts,* 168 N. Y. 14.)

*Richard Reid Rogers* and *Ralph Norton* for Interborough-Metropolitan Company, intervening.   The comptroller's determination was erroneous.  (*People ex rel. N. Y. & E. R. F. Co.* v. *Roberts,* 168 N. Y. 14; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight,* 173 N. Y. 255.)

*Edward R. O'Malley, Attorney-General* (*Franklin Kennedy* of counsel), for respondent.   The intention of the legislature in section 182, as amended, to tax the exercise of the corporate franchise by corporations earning no dividends on the basis of the par value of their issued capital stock, is manifestly expressed therein, as an ordinary reading shows, and there is no necessity for speculative or conjectural construction *aliunde.*  (*People* v. *H. Ins. Co.,* 92 N. Y. 328; *People ex rel. A. P. Co.* v. *Knight,* 174 N. Y. 475; *H. Ins. Co.* v. *New York,* 134 U. S. 594.)

WERNER, J.   The relator, a domestic corporation organized in 1893, has a capital stock of $1,000,000 of the par value of $100 per share, all issued and outstanding.   Its business con-

sists of transporting mail matter under contract with the Federal government through pneumatic tubes between postal stations in the several boroughs of the city of New York. Under section 182 of the Franchise Tax Law, the comptroller assessed a tax upon the relator for the years 1907 and 1908, based upon the relator's condition·in the years 1906 and 1907. This tax was assessed at the rate of ¾ of a mill upon each dollar of its capital at its par value.   The comptroller asserts that the *par value* of the capital stock employed in this state is the correct basis for the tax, and the relator insists that it is the *actual value* of the capital stock.

As regards the tax for 1908, based upon the relator's condition in 1907, this case is precisely like the case of *People ex rel. Fifth Avenue Building Co.* v. *Williams* (198 N. Y. 238) in which we have just held that the statute, as it stood in 1908 and as it stands to-day, cannot be held to authorize the franchise tax of ¾ of a mill upon the *par value* of capital stock employed in this state as against corporations which pay no dividends or whose assets do not exceed their liabilities, exclusive of capital stock, or whose stock has not been sold within the year at an average price equal to or exceeding its par value.   Our discussion of the considerations which led to that conclusion need not here be repeated at length.   We held that sections 182 and 190 of the Franchise Tax Law must be read together, and when so read the language of the latter providing for an appraisal of the capital stock at its *actual value* must be regarded as controlling the equivocal language of the former under which the comptroller asserts the right to tax upon the basis of capital stock at its par value.

As regards the tax of 1907, based upon the relator's condition in 1906, a somewhat different question is presented. In 1906 the provisions of section 182 were substantially the same as in 1907 and 1908, but section 190 was so amended in 1906 as to have no possible application to corporations of the class to which the relator belongs.   That part of section 182, as it stood in 1906, which *is* applicable to the relator, provided

that as to corporations which declared no dividends or whose dividend or dividends amount to less than six per centum on the par value of the capital stock, and whose assets do not exceed the liabilities, exclusive of capital stock, or whose stock has sold during the year at an average price which did not equal or exceed its par value, should be taxed at the rate of ¾ of a mill upon "*each dollar of the amount of capital stock employed in this State.*" In that year (1906) section 190 had been amended so that it related wholly to corporations with dividends of less than six per cent, but with assets in excess of liabilities, exclusive of capital stock, by an amount equal to or greater than the par value of the capital stock, or whose stock had been sold during the year at an average price equal to or greater than the par value of the capital stock. The relator was clearly not within the provisions of section 190, as amended in 1906, for it is conceded that it had declared no dividend, that its liabilities were greatly in excess of its assets, and that its stock had not been sold during that year at an average price equal to or in excess of its par value.

As to the tax of 1907, based upon the relator's condition in 1906, we must, therefore, be governed wholly by the language of section 182. The substance of the declaratory clause of that section is that every corporation, etc., shall pay annually, in advance, to the state treasurer, for the privilege of doing business or exercising its franchises within this state, an annual tax "to be computed upon the basis of the amount of its capital stock, employed during the preceding year within the state, and upon each dollar of such amount." This general clause is followed by a classification of corporations into several groups, the first of which includes all those which pay dividends of six per cent or more. These are taxed at the rate of ¼ of a mill "for each one per centum of dividends made or declared upon the par value of the capital stock during said year." Here we find the language of the statute clear and unequivocal. Omitting for the moment the second group and passing to the third, we find that corporations declaring or paying dividends of less than six per centum on the

par value of their capital stock, but having assets in excess of their liabilities, exclusive of capital stock by an amount equal to or greater than the par value of the capital stock, or whose capital stock has been sold during the year at an average price equal to or greater than the par value " shall be taxed at the rate of one and one-half mills on each dollar of *the valuation* of the capital employed in this State." Here we have an explicit declaration as to valuation followed by the further command that such valuation shall be not less than "(1) The par value of such stock, (2) The difference between the assets and liabilities exclusive of capital stock, (3) The average price at which such stock sold during said year." Returning now to the second group, which embraces corporations of the class to which the relator belongs, we see that when there are no dividends, or the assets do not exceed the liabilities exclusive of capital stock, or the average price at which the capital stock was sold during the year did not equal or exceed its par value, the tax is upon " *each dollar of the amount of capital stock employed in this State.*" The learned Attorney-General argues that because the legislature has very distinctly provided for a valuation of the capital stock of corporations embraced in the third group, and has omitted to do so as to corporations which fall within the second group, it must be assumed that as to the latter it intended to fix a minimum tax of ¾ of a mill upon their capital stock at the par value. At first impression we were inclined to this view, but a more careful consideration of the statute has brought us to a different conclusion. The theory of the statute, as disclosed by its successive amendments, seems to indicate that when the capital stock is the basis upon which the tax is to be assessed, there shall be an appraisal or valuation of the capital stock at its actual value. It is true that no such provision is to be found in that subdivision of section 182 which relates to corporations comprising the second group, but neither does it provide in explicit terms for taking the capital stock at its par value as the basis of the tax. " Each dollar of the amount of the capital stock

employed in this state " is to be taxed under that subdivision, but whether that means the amount at its actual value or at its par value is not disclosed.   The addition of a few words would have made the meaning of this part of the statute so clear as to preclude mistake or misunderstanding.   As it stands, it is doubtful and equivocal.   In his very forceful argument the learned attorney-general has presented all that can be said upon the subject, but the fact remains that we cannot adopt his views without construing this statute most strongly against the relator, and that is forbidden.   In *People ex rel. Mutual Trust Co.* v. *Miller* (177 N. Y. 51) we reiterated the familiar rule that " A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen.   The government takes nothing except what is given by the clear import of the words used, and a well founded doubt as to the meaning of the act defeats the tax." (p. 57.)   The application of that well-settled rule to the case at bar leaves nothing to be said except that the benefit of the doubt and uncertainty as to the meaning of this statute must be given to the relator and not to the state.

The order of the Appellate Division should be reversed and the determination of the comptroller annulled, with costs to the relator in both courts, and proceedings remitted to the comptroller for a re-assessment of the tax.

Vann, J. (dissenting).   In 1901, when the act of 1896 first came before us for construction, we held that the provision of section 182 directing that when a dividend of less than six per centum has been declared during the tax year, the tax should be at the rate of one and one-half mills upon the employed capital stock at par, should be read with section 190 providing for its assessment at its actual cash value and that in such case an assessment upon its par value would be erroneous.   (L. 1896, ch. 908; *People ex rel. N. Y. & East River Ferry Co.* v. *Roberts*, 168 N. Y. 14.)   Our decision was expressly limited to the language of the statute as it then stood and our main argument was *ab inconvenienti*, founded on the unreasonable

result of any other construction, as corporations paying a dividend of less than six per centum would be taxed the same as those paying six per centum even if the dividend was but one per centum and the market value not more than twenty-five. Other absurd and unequal results were pointed out by way of illustration and an amendment was suggested to remedy "inconsistencies and apparent unfairness."

In 1903 said act was again before us and this time through the action of a corporation which contended for taxation upon the par and not the actual value, as that was to its advantage because the par value was materially less than the actual value while the dividend was only five per centum, but of course we adhered to our previous decision. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Knight*, 173 N. Y. 255, 259.)

The radical change of 1906 in rate, method and principle was doubtless made to obviate the effect of our decisions in the two cases cited, and it seems to be conceded that if a further change had not been made in 1907, the relator would have been properly taxed on the par value of its capital stock. What did the act of 1906 provide? (L. 1906, ch. 474, §§ 182, 190.)

The corporations subject to taxation were separated into two divisions. The first included those paying dividends of six per centum or more, which were taxed at the rate of one-quarter of a mill for each per centum of dividends declared upon the par value of the capital stock. This division calls for no further attention.

The second division included corporations declaring dividends of less than six per centum and this was further separated into two classes, the first embracing corporations whose capital was impaired, and the second those whose capital was not impaired. The impairment of capital was measured by three tests ; so that if (a) the assets did not exceed the liabilities, or (b) if the average price at which the stock sold during the year did not equal or exceed its par value, or (c) if no dividend was declared, the capital was regarded as impaired, otherwise as unimpaired.

The first class, or corporations with impaired capital, were

taxed at the rate of *three-fourths of a mill* on each dollar of the amount of capital employed in this State, "determined as hereinbefore provided," that is, by taking such a portion of "the issued capital stock" as is measured by comparing "the gross assets employed in this State with the gross assets wherever employed." As no valuation was necessary and none was required by the provision imposing the tax, the fair inference is that none was intended, precisely as it is conceded that none was intended when the dividend is six per centum or more. The direction to tax at the rate specified on the par value is reasonably clear, for the tax is imposed on the amount of *issued capital stock* employed here and stock is issued at par. "Issued capital stock" was used in the act of 1906 for the first time as a general basis.

The second class, or corporations with capital unimpaired, were taxed at the rate of *one and one-half mills* on each dollar of the valuation of the capital stock employed in this State, but the valuation was carefully limited so that it could not be less than (a) the par value of such stock; (b) the difference between the assets and liabilities; (c) the average price at which the stock sold during the year. Valuation was required because no tax could be imposed without it, and it will be noticed not only that an implied direction to value was contained in the provision imposing the tax, but also that the word "valuation" is not used in the section except with reference to corporations of the second class.

Provision was also made for the taxation of corporations with more than one kind of stock, such as common and preferred for instance, upon the same principle.

The difference in the rate of taxation, varying from three-fourths of a mill on impaired stock to one and one-half mills on unimpaired stock, points to an unmistakable intention to tax the one at a low flat rate on the par value without valuation and the other at a high rate, or twice as much, on actual value, but of course with valuation. No adequate reason has been given to account for this distinction in rate, except on the theory that the legislature intended that a valuation

17

should be made in the one case and not in the other. I
regard this as the key to the legislative intent. While con-
struction is difficult, the meaning is not in doubt, for the
difficulty is owing to profuseness and prolixity almost
unparalleled.

Section 190, as it stood in the act of 1906, recognized the two
general divisions above pointed out and provided that corpora-
tions of the second division, or those declaring dividends of less
than six per centum, and (a) whose assets exceed their liabili-
ties by an amount equal to or greater than the par value of
the capital stock; or (b) whose stock sold during the year at
an average price equal to or greater than the par value, to
report an appraisal of their stock, subject to certain limita-
tions, to the comptroller, who, if not satisfied therewith, was
authorized to make his own valuation. This embraced only
corporations with unimpaired stock and accorded strictly with
the intention to tax that class at a higher rate upon the valua-
tion reported to the comptroller or made by him. It contained
no provision for a valuation of impaired stock.

This analysis shows the construction which, as I think,
should be given to the sections in question as they were prior
to the amendment of 1907. It sweeps away the entire founda-
tion upon which our decision in the *East River Ferry* case
rests; avoids the evils of the act of 1896 which led to that
decision; assigns a reasonable function to every provision of
the statute, and shows an intention to tax impaired stock at a
low rate on the par value and to tax unimpaired stock at a
high rate on the actual value. Corporations, even if finan-
cially weak, are taxed for the privilege of doing business in
this state, but at a lower rate and on a different basis from
those which are financially strong. There is a minimum tax
on all stock at its par value, but taxation is increased with
prosperity, which is not unreasonable. Moreover, where the
assets are less than the liabilities, " exclusive of capital stock,"
the stock is worth nothing, except as the power of control
may give it a fictitious value. If the stock of such a corpora-
tion were valued with no limitation, it would escape taxation

altogether, and yet would enjoy to the full extent "the privilege of doing business and exercising its corporate franchises," for which the tax is imposed.   Even with the limitations of average sale and price and the declaration of no dividend, the result might be the same, for there may have been neither sale nor dividend.   Indeed, if the stock of the relator is to be valued as the basis of assessment, it will escape taxation altogether for the privilege of doing business, and at the same time, under section 202, escape all taxation for state purposes on its personal property.   A construction permitting this result would defeat the fundamental purpose of the act and lead to as great injustice as was pointed out in the *East River Ferry* case.

What change was made by the act of 1907? (L. 1907, ch. 734, §§ 182, 190).

Section 182 was left undisturbed as far as it went, but an addition was made thereto.   The manifest object of the addition was to cover omitted cases, for in terms it provides for the taxation of corporations "not taxable under the preceding paragraphs" of the section.   The past history of the statute had shown that certain cases were not provided for and its subsequent history might show other cases still unprovided for, so from an abundance of caution an *omnium gatherum* clause was added in order that no corporation should escape taxation.   The difficulty of providing for unknown cases which might arise was obvious.   Neither the low rate applied to impaired stock, nor the high rate applied to unimpaired stock could be used with safety, so the legislature provided for taxation in such cases on a sliding scale, or "in an amount *not less* (note the precaution) than would be produced by an assessment of one and one half mills on each dollar of actual value," or (note the further precaution) at that rate on each dollar of stock at its average selling price during the year. The addition involved no change in the principle of taxation, but simply provided a flexible and carefully-guarded method for cases which time might show had not been covered, but which the comprehensive scheme of legislation was intended

to embrace. Several cases, which otherwise would not have been provided for, are said to have arisen since the amendment was passed.

Was the principle of taxation changed by the amendment of section 190 as made in 1907? That section contains no taxing provision. The taxing section is 182, where the principle is established and the details amplified, almost *ad nauseam*. This was not changed in any respect, but a significant addition was made thereto. One would not look for a change of principle in a section devoted not to taxation but to valuation, especially when valuation is required by a portion of section 182, although the method is not there prescribed. Whenever the legislature deemed valuation necessary, it required valuation in the taxing section, leaving it plainly to be inferred that no valuation was required in the two other grades. The inclusion of a part excluded the rest.

Section 190, as it was left in 1906, was verbose and confused. It repeated the provisions of section 182 in several respects, especially those relating to minimum valuations. Revision in the interest of simplicity and clearness was called for. The addition to section 182 made valuation necessary when there were two kinds of stock, even where no dividends had been declared, and hence the phrase " or no dividend is declared " was inserted. I think the purpose of the change was to thus harmonize the section with the *omnium gatherum* clause added to section 182 and to shorten and simplify by omitting the repetition of provisions already appearing elsewhere. The theory of the relator, as is well said by the learned attorney-general, would permit corporations of its class to receive the benefit of half the present rate of taxation for other corporations and half the rate previously applied to all corporations and yet to take advantage of a valuation lower than the par value.

In closing, I repeat what was said by the Appellate Division upon the subject, as follows : " The appraisal mentioned by section 190 of the amended law is necessary in many cases,

and it is very proper in every case where the dividend is not six per cent. or greater, that the comptroller have before him, as a part of the report, all the facts which may bring the case within any paragraph of the section, so that he may better determine under which paragraph it properly falls. Sections 190 and 182 are not therefore antagonistic, but may be harmonized and read together. Section 190 does not destroy the plain provisions of section 182 where the par value of the stock is made the basis for computation."

As the relator belongs to the first class of corporations, or those with impaired capital, I think it is taxable on the par value and not the actual value of its stock. This leads to affirmance, and I vote accordingly.

CULLEN, Ch. J., HAIGHT and WILLARD BARTLETT, JJ., concur with WERNER, J.; HISCOCK and CHASE, JJ., concur with VANN, J.

Order reversed, etc.