In the Matter of BROOKLYN UNION GAS COMPANY, Petitioner, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Respondent.

First Department, December 14, 1945. .

*Jackson A. Dykman* of counsel (*Arthur E. Goddard, Sigourney B. Olney* and *Milo F. McDonald, Jr.,* with him on the brief; *Cullen and Dykman,* attorneys), for petitioner.

*Isaac C. Donner* of counsel (*Gertrude Herschler* with him on the brief; *Ignatius M. Wilkinson, Corporation Counsel*), for respondent.

CALLAHAN, J. Petitioner, a corporation operating public utilities in the boroughs of Brooklyn and Queens, city of New York, is seeking to review a determination of the city taxing authorities imposing a local tax on its gross income.

In assessing such tax on petitioner the city has included in gross taxable income receipts from sales of certain by-products of petitioner's plant, and from scrap and appliances produced by it, all of which were sold for resale. There is no dispute with respect to the amount of said sales, nor as to the fact that they represent sales of goods for resale.

The tax period involved in this proceeding runs from July 1, 1937, to June 30, 1941. During that period both the State of New York and the City of New York have taxed the gross income of utilities, the State tax being at the rate of 2% and the city's tax at 1%.

The petitioner contends that as section 186-a of the Tax Law, the statute imposing the State tax, specifically excludes sales made for resale from taxable income of utilities, the City of New York was without power to adopt local laws including such income in its tax base.

From 1933 to 1937 the City of New York alone had imposed a gross tax on the income of utilities. It had done so by local laws which had been adopted pursuant to authority granted by various enabling acts.

By 1937 the rate of this gross income tax as imposed by the City of New York had reached 3% per annum.

In 1937 the Governor of the State recommended to the Legislature that the State impose a 2% tax, and that all cities of the State be permitted to impose a similar 1% tax, on the gross income of utilities. The Governor's message recommended that in order to avoid placing an unreasonable burden on the utility companies, a limitation of 1% be placed on the power of the cities to tax so that, taking into consideration the State's 2% tax, " the aggregate tax on public utility companies furnishing services in the City of New York will not be increased but will remain at three per cent as today ". (N. Y. Legis. Doc., 1937, No. 91, p. 4.)

After receiving said message, the Legislature enacted two statutes known as chapter 321 and chapter 327 of the Laws of 1937. Chapter 321 added section 186-a to the Tax Law and section 20-b to the General City Law. Section 186-a of the Tax Law imposed a tax of 2% on the gross income of every utility in the State subject to the supervision of the State Department of Public Service, and a like tax on the gross operating income of other utilities. Petitioner is a utility in the first category.

Section 186-a also contained a definition of gross income reading as follows: " § 186-a. * * * (c) the words ' gross income ' mean and include receipts received in or by reason of any sale (except sales hereinafter referred to with respect to which it is provided that profits from the sale shall be included in gross income) made or service rendered to persons for ultimate consumption or use by them in this state, including cash, credits and property of any kind or nature (whether or not such sale is made or such service is rendered for profit),

without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or services or other costs, interest or discount paid, or any other expense whatsoever; also profits from the sale of securities; also profits from the sale of real property growing out of the ownership or use of or interest in such property; also profit from the sale of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the period for which a return is made); also receipts from interest, dividends, and royalties, derived from sources within this state other than such as are received from a corporation a majority of whose voting stock is owned by the taxpaying utility, without any deduction therefrom for any expenses whatsoever incurred in connection with the receipt thereof, and also profits from any transaction within this state whatsoever * * *.'' It is to be noted that the foregoing definition makes taxable only income from sales made for ultimate consumption or use by a purchaser and thus excludes sales made for resale.

Section 20-b of the General City Law, as adopted by chapter 321 of the Laws of 1937, empowered any city of the State by local law to impose a city tax '' such as '' was imposed by section 186-a of the Tax Law, except that the rate of the city tax was not to exceed 1%. The section also provided: '' All of the provisions of section one hundred eighty-six-a of the tax law, so far as the same are or can be made applicable, with such limitations as are set forth in this section, and such modifications as may be necessary in order to adapt such taxes to local conditions shall apply to the taxes authorized by this section.''

Sections 186-a of the Tax Law and 20-b of the General City Law, as first adopted, were effective for one year. They have been extended from year to year by later legislative enactments. Some changes were made in the verbiage of the sections by the amendatory acts, but as such changes do not substantially affect the question presented to us, we shall omit more detailed reference to them.

Chapter 327 of the Laws of 1937 was a statute amending earlier enabling acts which had been adopted by the Legislature from 1933 to 1937, authorizing cities having a population of one million inhabitants or more to impose emergency taxes for various purposes. These annual enabling acts granted to such cities broad delegation of the taxing power of the State with express restrictions against the imposition of specified taxes. Pursuant to the authority conferred by these enabling

acts the City of New York had adopted from year to year local laws taxing the gross income of utility companies as well as imposing other forms of local taxation. At no time since the inception of its tax on the gross income of utilities had the city limited such tax to income from sales made for ultimate consumption.

Following the phraseology of the earlier enabling acts, chapter 327 of the Laws of 1937 provided that any city of one million inhabitants or more was authorized to adopt or amend local laws, imposing therein any tax or taxes which the Legislature had or would have the power to impose. Chapter 327 specifically provided, however, that it did not authorize the imposition of taxes on the gross income of public utilities subject to taxation under section 186-a of the Tax Law, except " in accordance with " the provisions of section 20-b of the General City Law. Chapter 327 then provided: " Except as expressly otherwise in this act provided, nothing herein contained shall limit or prevent the imposition of a tax on gross incomes or a tax on gross receipts of persons, firms and corporations doing business in any such city. No such person, firm or corporation, however, shall be subject to the imposition of more than one tax by any such city on gross income or gross receipts under the provisions of this act."

During the years 1938, 1939 and 1940, enabling acts containing provisions similar to those found in chapter 327 of the Laws of 1937 were also adopted by the Legislature (L. 1938, ch. 444; L. 1939, ch. 659; L. 1940, ch. 245). Each of these enabling acts contained a limitation on the authority of a city to tax gross income of utilities taxable under the provisions of section 186-a, to taxation " in accordance with " the provisions of section 20-b of the General City Law. Each of the new enabling acts also contained the general grant of power above quoted. Pursuant to these acts, the City of New York in each year adopted local laws taxing the gross income of utilities, including income from all sales.

Again we find it unnecessary to refer in detail to these numerous amendatory enabling acts or local laws, as we deem that no provision thereof materially alters the question of construction now presented. We may state, however, that the enabling acts enacted after the adoption of the new Constitution in 1939, in compliance with the constitutional requirement, specified in detail the kind of taxes that might be imposed, instead of, as theretofore, granting broad delegation of power to tax subject to specific limitations.

The question we must decide is whether the Legislature in adopting chapter 321 and chapter 327 of the Laws of 1937, and the subsequent acts extending those laws, intended to limit the power of the City of New York so as to permit it to tax only such gross income of utilities as was taxed by the State under section 186-a of the Tax Law.

Petitioner contends that such a limitation has been imposed by reason of the provisions in chapter 327 of the Laws of 1937 and the subsequent enabling acts, requiring all taxation by any city on the gross income of utilities to be " in accordance with " the provisions of section 20-b of the General City Law. It points out that in turn section 20-b of the City Law limits the power of cities to taxes " such as " are imposed by section 186-a, and contains the further requirement that all provisions of section 186-a shall apply to any tax imposed under section 20-b insofar as the provisions of section 186-a can be made applicable. These provisions, says the petitioner, read together, limit the power of the city to taxation of gross income as defined in section 186-a.

The respondent, on the other hand, asserts that the limitation found in chapter 327 of the Laws of 1937, to the effect that any tax on the gross income of utilities be " in accordance with " the provisions of section 20-b of the City Law, was intended merely to limit a city of one million or more inhabitants to the 1% tax rate imposed by section 20-b. It contends that the limitation found in section 20-b requiring that a tax be one " such as " is imposed by section 186-a, merely means one similar to or of the same general nature as the tax provided for in section 186-a. The city further contends that the general grants of power contained in the various enabling acts fully authorize the city to tax all receipts from the gross income of utilities operating in the city of New York, without exception or limitation. In fact, it contends that as to any receipts of such utilities not taxed by the State under section 186-a, the city is free to tax them at any rate it sees fit, although in fact, to date, it has only taxed them at the 1% rate.

We think that the provisions of the law above referred to must be construed to limit the power of the City of New York to tax the gross income of utilities operating within said city, to the tax base specified in the definition of gross income found in section 186-a.

The provisions in the local enabling acts adopted in 1937 and thereafter, to the effect that gross income of utilities subject to tax under section 186-a, shall not be taxed by the city except " in

accordance with '' section 20-b of the General City Law, cannot be construed to mean merely that the local tax be at the rate of 1%. This would be giving the phrase '' in accordance with '', the unwarrantedly narrow meaning of '' partially in accordance with ''. All the relevant provisions of section 20-b would seem to be made applicable by the requirement that taxes imposed under the general enabling acts be '' in accordance with '' the provisions of that section. Section 20-b provides that any tax imposed by the city under the provisions of said section must be one '' such as '' was imposed by section 186-a. In addition it requires that all of the provisions of section 186-a, insofar as the same are or can be made applicable (with certain limitations and restrictions which are not effective here), apply to taxes authorized by section 20-b. Reading the sections together, as we are required to do by the references made, the limitations in chapter 327 include those found in section 186-a insofar as such limitations can be made applicable. We can conceive of no valid reason why a definition limiting the base of the tax to certain sales can not be made applicable to utilities operating in the city of New York.

In support of its contention that the phrase '' such as '' should be construed to mean '' of the same general character,'' the respondent cites numerous dictionary definitions. While it is true that the phrase '' such as '' is sometimes given a broad meaning of general similitude, it is equally true that the phrase is at times given a more restricted meaning of '' not other or different '' (The Century Dictionary and Cyclopedia). But we are not required merely to determine whether the phrase '' such as '' was intended to be used in its broader or more restricted sense in the statute, for the additional provisions of section 20-b plainly provide that any local laws adopted pursuant to section 20-b shall be in conformity with all the applicable provisions of section 186-a.

The City of New York, as a city of more than one million inhabitants, was empowered to impose local taxes by the general enabling statutes. Its right to do so did not find its origin in section 20-b. However, as to taxation of the gross income of utilities, any general grants of power contained in the enabling acts were restricted by the particular limitations placed thereon, including those read in by reference. (*Hoey* v. *Gilroy,* 129 N. Y. 132; *City of Poughkeepsie* v. *Quintard,* 136 N. Y. 275; *Matter of Holzworth,* 166 App. Div. 150.)

As to the city's claim that it is free to tax any receipts of utility corporations not taxed by the State under section 186-a

at any rate it sees fit, we think that such a construction would clearly defeat what appears to have been the purpose of the Legislature in limiting the aggregate tax of the State and the cities thereof, to a total of 3%.

Our attention has been called to the provisions of subdivision 13 of section 186-a of the Tax Law which respondent says evidence a legislative intent to permit the city's tax to be upon a broader base than that of the State. This subdivision reads as follows: " 13. Notwithstanding any other provision contained in this or any other law, in the event the city of New York shall enact a local law imposing a tax on utilities, such as is imposed by this section, except as to the rate of tax, the tax commission, in its discretion, may arrange with the chief fiscal officer of said city for the collection by him of the tax imposed by this section with respect to items that enter into the tax base for both the tax imposed by said city and that imposed pursuant to this section, and for the remittance by him of the tax imposed by this section to the tax commission for disposition as in this article provided. If such an arrangement be made, all the provisions of the local law of said city imposing the local tax shall apply with respect to the tax imposed by this section in the same manner as if the local tax rate had included the tax imposed by this section."

It is our view that this permissive administrative provision authorizing the Tax Commission in its discretion to arrange for collection of this class of tax by the city's fiscal officer, cannot be read so as to nullify the provisions of section 20-b of the General City Law making all the provisions of section 186-a of the Tax Law applicable to any tax by a city. While it is not entirely clear what was intended by the reference in subdivision 13 to " items that enter into the tax base for both the tax imposed by the city and that imposed [by the State] ", it may well be, as argued by the petitioner, that such provision was intended to refer to situations where utility companies operate both within and without the city of New York. The authority of the City of New York to tax was clearly limited to transactions originating or consummated within the territorial limits of the city. Only income from transactions within such territorial limits would be part of the tax base for both the city and State. The words referred to may have been intended to take care of the situations mentioned. If there is any ambiguity involved, it relates solely to the meaning of this subdivision.

We give no greater weight to the argument of respondent that the form of subsequent statutes amending the law as to

the city's power to tax the gross income of utilities, manifested a practical construction by the State and local Legislatures, indicating that section 186-a was not intended to limit the local taxing power. The fact that after 1937 certain amendments specifically limiting the power of the City of New York to tax gross income of utilities in other respects were placed in the enabling acts rather than in section 186-a, could not be held, on the theory of practical construction, to overcome the plain force of the language incorporated in the original and amended statutes. (*Matter of Hines* v. *La Guardia,* 293 N. Y. 207.)

In determining the meaning of these taxing statutes we must be guided by the rule of construction which provides: " A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax." (*People ex rel. Mutual Trust Co.* v. *Miller,* 177 N. Y. 51; *People ex rel. N. Y. M. & N. T. Co.* v. *Gaus,* 198 N. Y. 250; *Matter of Good Humor Corporation* v. *McGoldrick,* 289 N. Y. 452.)

It is our view that during the period involved herein, income from sales of personal property made by utility corporations for resale by the purchaser thereof was not taxable. It follows that the determination of the comptroller insofar as it imposed a tax upon such sales should be annulled, with $50 costs and disbursements to the petitioner, and any collections which were made based thereupon refunded, with penalties and interest.

WASSERVOGEL, J. (dissenting in part). This is a proceeding, under article 78 of the Civil Practice Act, to review an assessment by the City of New York against the taxpayer of a deficiency and penalties in taxes.

The taxpayer is a public utility, operating under the supervision of the Public Service Commission, and is engaged in the production, distribution and sale of manufactured gas and its by-products in New York City. The challenged assessment, in the amount of $91,580.96 plus interest and penalties, is imposed under the New York City Utility Tax Laws, and covers the period from July 1, 1937, to June 30, 1941 (Local Laws, 1937, No. 23 of City of New York; Local Laws, 1938, No. 22 of City of New York; Local Laws, 1939, No. 104 of City of New York; Local Laws, 1940, No. 80 of City of New York).

The tax provided for in these local laws is at the rate of 1% on public utilities operating in New York City, and is measured

by the gross receipts as therein defined. This local definition of gross income is the origin of the present dispute. The city defines taxable gross income to include the proceeds of all sales, whether for resale or for consumption. The taxpayer, having paid the tax upon sales for consumption, failed to return, as income, its receipts from sales for resale by the purchaser. The deficiency assessment followed.

The taxpayer is also subject to a State utility tax, under section 186-a of the Tax Law, at the rate of 2% of gross income. The State, however, in its definition of the measure of the tax, excludes the proceeds of sales for resale.

The controversy turns upon legislation originally adopted by the State of New York in 1933 to enable the city to cope with the rapidly growing problem of unemployment. The Legislature, declaring that an emergency existed, authorized the city " to adopt and amend local laws imposing in any such city any tax which the Legislature has or would have power and authority to impose " (L. 1933, ch. 815). It has been said that this license to tax is " broad and unprecedented " (*New York Steam Corp.* v. *City of New York,* 268 N. Y. 137, 145, per LOUGHRAN, J.).

Pursuant to this authority, the city, by local law duly enacted, imposed a tax upon the gross receipts of public utilities at the rate of 1½% (Local Laws, 1933, No. 19 of City of New York, pp. 127–135). Thereafter, with some modification which will be referred to, the State annually renewed this broad taxing authority of the city. Similarly, the city utility tax was enacted each year by appropriate local legislation, the rate of the tax, however, being increased to 3% in 1935 (Local Laws, 1933, No. 19 of City of New York; Local Laws, 1934, Nos. 10, 20 [published as No. 21] of City of New York; Local Laws, 1935, Nos. 2, 30 of City of New York; Local Laws, 1936, No. 30 of City of New York). In each of these local laws, the tax was levied upon gross income, including receipts from sales for resale.

In 1937, the State itself required additional revenue for unemployment relief. Governor Lehman accordingly recommended to the Legislature that an additional appropriation be made for this purpose and proposed that the necessary funds be raised by the imposition, beginning July 1, 1937, of a 2% tax on the gross receipts of public utility companies in the State (N. Y. Legis. Doc., 1937, No. 91).

The Governor added that since the City of New York was still in need of the extraordinary taxing power conferred upon it annually since 1933, this authority should be renewed. Lest an

unreasonable burden be placed on utilities, however, the Governor recommended that a limitation of 1% be placed on the city utility tax. Thus, the Governor stated, " the aggregate tax on public utility companies furnishing services in the City of New York will not be increased but will remain at three per cent as to-day; two per cent will be imposed by the State for unemployment relief, one by the City for the same purpose " (N. Y. Legis. Doc., 1937, No. 91, p. 4).

The Governor further found that cities, other than New York City, were similarly in need of additional taxing authority to raise funds for unemployment relief, and proposed that such municipalities be given permissive authority to impose a 1% tax on utility services rendered within their territorial limits.

Acting upon these recommendations of the Governor, the Legislature enacted the following legislation:

(a) It added section 186-a to the Tax Law, imposing a 2% tax on the gross income of utilities (L. 1937, ch. 321). " Gross income ", however, was limited to receipts from sales " for ultimate consumption or use " in this State (Tax Law, § 186-a, subd. 2, cl. [2]).

(b) The General City Law was amended by the adoption of a new section, 20-b (L. 1937, ch. 321), which authorized any city of the State to impose a tax " such as is imposed by section one hundred eighty-six-a of the tax law, except that the rate thereof shall not exceed one per centum of gross income ". This section also provided that the provisions of section 186-a of the Tax Law should apply to the taxes thus authorized " so far as the same are or can be made applicable, with such limitations as are set forth in this section, and such modifications as may be necessary in order to adapt such taxes to local conditions ".

(c) The 1937 enabling act, conferring general authority upon the City of New York to impose such levies as the State could adopt, contained this proviso: " This act shall not authorize the imposition of a tax * * * upon gross incomes or gross operating incomes subject to taxation under the provisions of section one hundred eighty-six-a of the tax law, except in accordance with the provisions of section twenty-b of the general city law." (L. 1937, ch. 327, § 1.)

Subsequent to these 1937 enactments, the State continued each year the taxing authority conferred upon the city, with the same limitations as to utility taxes. The city, as required by this restriction, reduced its tax to 1% on the gross receipts of utilities. But the measure of the tax continued, as before, to include the proceeds of sales for resale. This, the taxpayer contends, the city may not do.

It is urged that the enabling acts provide that the city may not tax gross incomes subject to taxation under section 186-a, save in accordance with section 20-b of the General City Law; that the gross income of the taxpayer is subject to taxation under section 186-a; that section 20-b of the General City Law, therefore, is controlling, and that, under that provision, the City of New York, as in the case of other municipalities, may levy only such a tax as is imposed by section 186-a.

If the measure of the city's tax is controlled by section 20-b of the General City Law, its position here cannot be sustained. Under that provision, all the cities of the State are authorized to impose a tax such as is imposed by section 186-a, and it is further enacted that the provisions of section 186-a shall govern, wherever applicable. The restricted definition of gross income, contained in section 186-a seems thus clearly applicable to the taxing authority of municipalities under section 20-b of the General City Law.

But the applicability of section 20-b to New York City does not appear. The enabling act provides that the city shall not tax incomes which are " subject to taxation " under section 186-a, except in accordance with section 20-b. But the receipts of utilities derived from sales for resale are *not* subject to taxation under section 186-a. On the contrary, that law expressly excludes these sales from the measure of the tax. As to incomes *not* taxed under section 186-a, there is no restriction imposed by the statute on the taxing authority delegated to the city.

Any other view runs counter to the clearly expressed legislative intent. The origin of the limitation upon the city lies in the State utility tax. The Legislature, having determined to levy a 2% tax, sought to relieve utilities of the combined burden of a 2% State tax and a 3% city tax. To that end, therefore, the city was limited to a 1% levy. But where the State did not tax, it imposed no burden on utilities. There was, therefore, no occasion to restrict the city impost.

It is said that unless the city's authority is circumscribed as the petitioner contends, the city might impose a tax at any rate upon the receipts of utilities derived from sales for resale. This, it is urged, circumvents the legislative purpose to relieve the utilities of a tax in excess of 3%. Prior to 1937, however, the city was clearly free to tax the gross receipts of utilities, including the proceeds of sales for resale, and at any rate deemed advisable. The 1% restriction created in 1937 arose solely out of the circumstance that the State had entered the field of utility taxation. In the area of the State tax (sales for consumption), the Legislature provided that the maximum total levy should be

3%. But there is no restriction in the law covering the city's authority to tax incomes not covered by the State impost. In the latter sphere, the city's taxing authority, in respect to utilities, is identical with that generally applicable to all persons doing business in the city.

Nor does the extent of the city's taxing authority warrant the creation of limitations not provided for by the Legislature. As was pointed out when the validity of the original enabling act was challenged: " Broad and unprecedented as is the license so conferred, we are without jurisdiction to circumscribe or modify it." (*New York Steam Corp.* v. *City of New York,* 268 N. Y. *supra,* 145.)

It is to be remembered that this tax, imposed by the city, is not to be regarded as being inferior for any purpose to the State tax. In dealing with emergency unemployment relief, the city " is collecting funds to be used, not for city purposes, but solely for emergency relief which is a matter of State concern." (*Matter of Brown Printing Co.,* 285 N. Y. 47, 52.) There is, therefore, no occasion to impose limitations not expressly created by the applicable legislation.

A modification of the enabling act, adopted in 1940 (L. 1940, ch. 245), is further relied upon by the taxpayer to support its contention. In that year, the city's taxing authority was restricted by a proviso that it was not to impose a tax " upon interest or dividends received from a corporation by a person referred to in this paragraph." The paragraph in question is that which contains the limitation upon the city's utility tax. At the same time, the proviso was further amended by the addition of the words " of persons " after the phrase " upon gross income or gross operating incomes ". Thus, the provision, so far as here relevant, provided: " This act shall not authorize the imposition of a tax * * * upon gross incomes or gross operating incomes *of persons* subject to taxation under the provisions of section one hundred eighty-six-a of the tax law, except in accordance with the provisions of section twenty-b of the general city law ". (New matter in italics.)

The contention is that the city is thus debarred from taxing gross incomes of " *persons* " subject to taxation under section 186-a, save in accordance with section 20-b; and that utilities clearly are such " persons ". This interpretation overlooks the other exception contemporaneously engrafted upon the enabling act. It was provided that the city was not to tax interest or dividends received from a corporation " by a person referred to in this paragraph." Since it was intended that the city should not

be permitted to tax the interest or dividend income of utilities, the form of the language used made it necessary to add the words " of persons " to the preceding clause. The phrase " subject to taxation ", however, must still be deemed to modify gross incomes, not persons. The statute still confines the limitation to gross incomes subject to taxation under section 186-a.

This construction finds further support in the legislative history of the various limitations placed upon the city. Whenever it was intended to restrict the city, the limitation was phrased in express language. By successive enactments over the years, the city was denied the right to impose " a tax on incomes or upon the transfers of estates of deceased persons, or upon the gross income from the operation of hotels, multiple dwellings or office buildings by persons " engaged in certain transportation activities (L. 1940, ch. 245). Had there been a purpose to exclude utility sales for resale from the city's sphere of taxation, it is reasonable to expect that the legislative policy of expressly stating the limitation would have been adhered to.

While rules of statutory construction are to be used with care, they represent a salutary guide. It is well settled that a proviso which restricts the application of a remedial statute is to be strictly construed and is not to be enlarged to include any case not clearly within the purpose or express terms of the exception (*Gregg Cartage Co.* v. *U. S.*, 316 U. S. 74; *Piedmont & Northern Ry.* v. *Comm.*, 286 U. S. 299; *Wheeler* v. *Wheeler*, 134 Ill. 522; *Dean* v. *McMullen*, 109 Ohio St. 309).

Here, the limitation derives from a legislative purpose to avoid multiple taxation by State and city. Where the State does not tax, the limitation is without purpose. There is no such limitation in the express language of the statute, and none should be read into it by implication.

The course of the legislation, which ultimately culminated in section 186-a of the Tax Law, in the Assembly and Senate, further buttresses the city's position. Initially, the bill introduced defined the measure of the tax identically with that contained in the city's levy, and included the proceeds of sales for resale (Assem. Pr. No. 3085, Sen. Pr. No. 2422; Assem. Int. No. 2487, Sen. Int. No. 1989 [1937]). This bill, further, in its proposed amendments to the General City Law, which finally became section 20-b of that law, provided that any local law passed pursuant to the legislative authority conferred, was to be " identical with the tax imposed by section one hundred eighty-six-a ".

Thereafter, the Legislature varied its definition of gross income to exclude the proceeds of sales for resale. It was then that the provision, which became part of section 20-b, was modified to read that the provisions of section 186-a should govern local taxes " so far as the same are or can be made applicable * * *."

The elimination of the requirement of identity, as to the taxing authority of municipalities generally, is significant evidence of the fact that there was no legislative purpose to impose upon New York City the State's definition of gross receipts. Whether other municipalities are similarly free to adopt a base differing from that of the State, need not now be decided.

On this phase of the case, the city refers further to subdivision 13 of section 186-a, which authorizes the State Tax Commission to arrange with the city to collect the State and city taxes jointly " with respect to items that enter into the tax base for both the tax imposed by said city and that imposed pursuant to this section ". Here, again, is legislative recognition of possible variations in the State and city tax base. The determination of the comptroller should therefore be confirmed, subject to a modification now to be considered.

The taxpayer contends that, apart from the foregoing, the city had no authority to impose any tax on utilities for the period between January 1, 1939, and July 1, 1939. This contention rests upon section 1 of article XVI of the New York Constitution, which became effective on January 1, 1939. Under that section, the State was prohibited from delegating its taxing power, except by a statute which " shall specify the types of taxes which may be imposed thereunder ". The enabling act, adopted by the State Legislature in 1938 and effective for the period from January 1 to July 1, 1939 (L. 1938, ch. 444), contained no such specification. The delegation, therefore, of the taxing authority is in clear violation of the constitutional provision, and must fall. It follows that this contention of the taxpayer should be sustained.

MARTIN, P. J., TOWNLEY and COHN, JJ., concur with CALLAHAN, J.; WASSERVOGEL, J., dissents in part in opinion.

Determination, insofar as it imposed a tax upon income from sales of personal property made by utility corporations for resale by the purchaser thereof, annulled, with $50 costs and disbursements to the petitioner, and any collections which were made based thereupon directed to be refunded, with penalties and interest. Settle order on notice.