In the Matter of BROOKLYN UNION GAS COMPANY, Appellant, v COMMISSIONER OF DEPARTMENT OF FINANCE OF THE CITY OF NEW YORK et al., Respondents.

First Department, April 16, 1985

**APPEARANCES OF COUNSEL**

*Edward J. Walsh, Jr.,* of counsel (*James F. Matthews, Timothy B. Bancroft* and *Thomas B. Wassel* with him on the brief; *Cullen & Dykman,* attorneys), for appellant.

*Gale Zareko* of counsel (*Anshel David* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

*Monte Engler* and *Robert S. Powers* of counsel (*Javits, Hinck-ley, Rabin & Engler,* attorneys), for Page Boy Inc., and others, *amici curiae.*

*H. Richard Schumacher* of counsel (*Cahill, Gordon & Reindel,* attorneys), for Transcontinental Gas Pipe Line Corporation, *amicus curiae.*

*Harold M. Seidel* of counsel (*LeBoeuf, Lamb, Leiby & Macrae,* attorneys), for Texas Eastern Transmission Corporation, *amicus curiae.*

### OPINION OF THE COURT

BLOOM, J.

Petitioner brings this CPLR article 78 proceeding to review two final determinations by the Commissioner of the Department of Finance denying its application for refunds of the utility taxes paid to the City of New York for the tax periods May 1, 1980 through November 30, 1981, and December 1, 1981 through November 30, 1982. Involved are many millions of dollars and the interrelationship and interpretation of a number of murky statutes.

Our story begins back in 1933, when the country was in the throes of the greatest depression in its history. In order to assist the city, then in financial crisis and laboring under the yoke of the "Bankers Agreement", the Legislature authorized the city to impose temporarily any tax which the State itself could impose (L 1933, ch 815). Pursuant to this broad grant of power, an excise tax was imposed by the city upon utilities. The temporary power thus conferred was continued from time to time.

In 1937 the State adopted its own utility tax (L 1937, ch 321, as adding Tax Law § 186-a). By the same chapter, it enacted General City Law § 20-b which empowered "any city of this state, acting through its local legislative body * * * to adopt and amend local laws imposing * * * a tax such as is imposed by section one hundred eighty-six-a of the tax law". However, it limited the tax to "one per centum of gross income or of gross operating income, as the case may be, and may make provision for the collection thereof by the chief fiscal officer of such city".

Commencing in 1937 the State imposed a tax of 2% on the gross income of section 186-a utilities. The city, which theretofore had imposed a 3% tax reduced its tax to 1% to comport with the recommendation of the late Governor Lehman that "the aggregate tax on public utility companies furnishing services in the City of New York will not be increased but will remain at three per cent as today" (1937 NY Legis Doc No. 91, at 4, as

quoted in *Matter of Brooklyn Union Gas Co. v McGoldrick,* 270 App Div 186, 189, *affd sub nom. Matter of Brooklyn Union Gas Co. v Joseph,* 298 NY 536).

In 1959, the Legislature enacted Laws of 1959 (ch 369) which, in section 5 (amdg L 1934, ch 873, § 1 [5] [3]), exempted the city from the 1% limitation contained in General City Law § 20-b. In 1965, the authority to tax and the limitation on rates of taxes were incorporated into Tax Law article 29. Section 1201 dealt with cities of one million or more and it authorized such cities to impose taxes on the privilege of doing business or practicing any calling. Specifically, these included businesses possessing or exercising any franchise or franchises. The same chapter (L 1965, ch 93) enacted Tax Law § 1221 which provided, so far as is here pertinent:

"(a) This article shall not be construed as authorizing the imposition of * * *

"(3) except in accordance with the provisions of section twenty-b of the general city law, a tax upon gross incomes or gross operating incomes of persons subject to taxation under the provisions of section one hundred eighty-six-a of this chapter, but this clause shall not be deemed to restrict the power to tax persons not subject to taxation under such section of this chapter who are otherwise subject to taxation under subdivision (a) of section twelve hundred one".*

Thus, the statutes, as they currently stand, when read together confer upon the city the power to tax those utilities specified in Tax Law § 186-a (Tax Law § 1201), but only at the rate specified in General City Law § 20-b (Tax Law § 1221 [a] [3]). Notwithstanding the limitation contained in General City Law § 20-b and Tax Law § 1221, the city enacted Administrative Code of the City of New York, chapter 46, title QQ. Section QQ46-2.0 provides for the levy upon utilities of an excise tax "equal to two per centum of its gross income until and including December thirty-first, nineteen hundred sixty-five, and shall be equal to two and thirty-five hundredths per centum thereafter". There is no dispute as to the propriety of the local laws enacted by the city through its local legislative body for the periods antedating 1965.

With this as background, we turn to the specific facts before us. It is undisputed that petitioner is a public utility and is subject to both State and New York City taxes as provided in

---

* In 1977, section 1221 (a) (3) was amended to include clarifying language which is not here germane.

Tax Law § 186-a. From May 1, 1980 through November 30, 1982, it filed monthly New York City utility tax returns and paid the tax at the rate of 2.35% on the gross income reported as taxable. On or about January 25, 1983, petitioner submitted to the New York City Department of Finance an application seeking a refund of the city utility tax paid, in the amount of $10,964,574.39 for the period commencing December 1, 1981 and ending November 30, 1982. In its application, petitioner contended that the rate of tax properly assessable against it was at the rate of 1% on gross income and not the 2.35% which it actually had paid. It requested a refund of the overpayment. On or about June 25, 1983, the Department of Taxation and Finance received a similar application seeking a refund of $12,396,909.48 for the period commencing May 1, 1980 and terminating on November 30, 1981, based upon the same grounds.

The matter proceeded to hearing before a formal referee. All of the facts, as heretofore set forth, were stipulated to. The formal referee recited the enabling legislation, Tax Law § 1201 (a), noting that for utilities the prescribed rate of tax shall "not [be] in excess of two and thirty-five one hundredths times the rate fixed for the corresponding tax by local law forty-nine of the city of New York for the year nineteen hundred forty-one". Concededly, Local Law, 1941, No. 49 dealt with the imposition of the utility tax authorized by the Legislature. Also true is the fact that Local Law, 1941, No. 49 imposed a tax on gross income of utilities of 1%. Thus, the formal referee, multiplying 1% by 2.35, reached the conclusion that the tax of 2.35% on gross income fixed in section QQ46-2.0 was proper. In order to reach this conclusion he was compelled to argue that to give effect to Tax Law § 1221 (a) (3) and General City Law § 20-b would render meaningless the authorization conferred by Tax Law § 1201. In so doing, however, he was also compelled to ignore the opening paragraph of section 1201 which reads as follows:

"§ 1201. Taxes administered by cities of one million or more

"Notwithstanding any other provisions of law to the contrary, *but subject to the applicable limitations and exemptions in part II of this article,* any city in this state having a population of one million or more, acting through its local legislative body, is hereby authorized and empowered to adopt and amend local laws imposing in any such city any or all of the types of taxes set forth in the following subdivisions of this section, such taxes to be administered and collected by the fiscal officers of such city in the manner provided for in subpart A of part III of this article" (emphasis supplied).

However, section 1221 (a) (3), which is one of the sections contained in part II of article 29, requires that taxation upon section 186-a utilities be "in accordance with the provisions of section twenty-b of the general city law". Thus, these interrelated statutes indicate that the city may impose a tax on section 186-a utilities but the tax must be in accordance with the provisions of General City Law § 20-b which limits the tax to 1% of gross income or gross operating income.

We are well aware of the requirement that: "statute[s] must be read with the legislative goal in mind, so that controversies generated by ambiguities or gaps in the law may be resolved in accordance with the legislative scheme. (See 1 Kent Commentaries 462.) Courts are obligated to apply a statute to the extent possible to accomplish its purpose and to avoid incongruous, unreasonable, or unjust results." (*Matter of Pell v Coveney,* 37 NY2d 494, 496.) " 'In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. * * * Literal meanings of words are not to be adhered to or suffered to "defeat the general purpose and manifest policy intended to be promoted" ' " (*Essenfeld Bros. v Hostetter,* 14 NY2d 47, 52). Nonetheless, we are not free to substitute our own concept of what should have been done for that which the Legislature has mandated. "A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration" (*Lawrence Constr. Corp. v State of New York,* 293 NY 634, 639; *Saltser & Weinsier v McGoldrick,* 295 NY 499, 506).

This is particularly true of tax statutes, which are to be interpreted in favor of the taxpayer (*Matter of Quotron Sys. v Gallman,* 39 NY2d 428; *Matter of Quotron Sys. v Irizarry,* 48 NY2d 795; *Matter of Brooklyn Union Gas Co. v McGoldrick,* 270 App Div 186, *supra; Matter of Mack v Assessor of Town of Ramapo,* 72 AD2d 604). " 'A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the acts defeats the tax' " (*Matter of Good Humor Corp. v McGoldrick,* 289 NY 452, 455; *People ex rel. New York Mail & Newspaper Transp. Co. v Gaus,* 198 NY 250, 255; *Matter of Brooklyn Union Gas Co. v McGoldrick,* 270 App Div 186, 195, *supra*).

If the Legislature has erred in correlating this maze of somewhat obscure statutes, the burden therefore must fall upon the

city. We have no alternative but to read the statutes as they have been written (*Lawrence Constr. Corp. v State of New York,* 293 NY 634, *supra; Saltser & Weinsier v McGoldrick,* 295 NY 499, *supra*).

■ Although we agree with petitioner that the tax imposed by the city exceeded the per cent of gross income authorized by law, we cannot agree that, by reason thereof, the tax imposed was a nullity. The city had the power to levy the tax. Its error lay in imposing a *rate* in excess of that limited by law. Hence, petitioner may recover only the amount by which the tax, as levied, exceeded the amount authorized by Tax Law §§ 1201 and 1221 and General City Law § 20-b. It may not recover the entire amount paid (*Niagara Mohawk Power Corp. v City School Dist. of City of Troy,* 59 NY2d 262). Indeed, petitioner, in its requests for the refunds, limited itself to the amounts of the overpayments.

A final matter remains to be resolved. The formal referee dealt with the matter on the merits. He did not consider whether the claimed refund, or any portion thereof, was barred by the lapse of time.

Tax Law § 1201, in its opening paragraph, provides that the taxes authorized are "to be administered and collected by the fiscal officers of such city in the manner provided for in subpart A of part III of [article 29]." Tax Law § 1240, which is part of subpart A of part III, provides in pertinent part as follows: "The taxes authorized under sections twelve hundred one through twelve hundred four which are now imposed shall continue to be administered and collected by the fiscal or other officers of the city, county or school district in the same manner as such taxes have been administered and collected by such officers immediately prior to the enactment of this article, in accordance with the applicable provisions of the charter, administrative code, local law, ordinance or resolution then in force, with such amendments in respect to administration and collection as may be enacted."

The local law in effect at the time of the adoption of Tax Law article 29 which governed refunds was Administrative Code § Q46-7.0 (a). Its current counterpart is Administrative Code § QQ46-7.0 (a). Insofar as here pertinent, both read as follows: "In the manner provided in this section the director of finance shall refund or credit, without interest, any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid, *if application for such refund shall be made to the director of finance within one year from the payment thereof*" (emphasis supplied).

■ It would appear, therefore, that a large portion of the period for which claims are asserted by petitioner may be time barred.

Accordingly, the petition should be granted, the determinations of the Finance Commissioner of the City of New York annulled and the matter remanded to the Finance Commissioner of the City of New York for the purpose of determining whether all or any portion of the claimed refund is barred by reason of the failure of petitioner to make its claim for refund within the time limited by law, all without costs.

KUPFERMAN, J. P. (dissenting). The opinion by Bloom, J., aptly states the background of the problem with respect to the utility tax involved. While the whole matter, even under the majority's approach, in view of the Statute of Limitations problem, may be an exercise in futility as far as the application for refunds is concerned, I would confirm. The legislative intent is clear that the 2.35% rate should apply. A tortuous intertwining of the various provisions of the State and city tax law cannot negate this.

Ross and CARRO, JJ., concur with BLOOM, J.; KUPFERMAN, J. P., dissents in an opinion.

Determinations of the respondent Finance Department, dated March 15, 1984, annulled and vacated and the matter remanded to the Finance Commissioner of the City of New York for the purpose of determining whether all or any portion of the claimed refund is barred by reason of the failure of petitioner to make its claim for refund within the time limited by law, without costs and without disbursements.