**HALLMARK BUILDING COMPANY,**
Plaintiff–Appellant,

v.

**WESTLAND MEADOWS OWNERS ASSOCIATION, INC.,** Defendant–Appellee.

No. 97CA2191.

Colorado Court of Appeals,
Div. IV.

April 29, 1999.

Certiorari Denied Aug. 30, 1999.

Jeffrey L. Weeks, Colorado Springs, Colorado, for Plaintiff–Appellant

Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado; Anderson, Dude, Pifher & Lebel, P.C., Lenard Rioth, Lynn Billings, Colorado Springs, Colorado, for Defendant–Appellee

Opinion by Judge ROTHENBERG.

Plaintiff, Hallmark Building Co. (Hallmark), appeals the summary judgment entered in favor of defendant, Westland Meadows Owners Association, Inc., (Association) on the issue of liability for back assessment fees and the order awarding attorney's fees and costs to the Association. Hallmark further appeals the court's failure to invalidate an assessment lien and failure to award statutory damages, attorney's fees, and costs to Hallmark. We reverse and remand for further proceedings.

In the 1980's, North American Homes (North American) developed the Westland Meadows subdivision with approximately 100 lots. North American filed a declaration of covenants, conditions, and restrictions for the subdivision with the county clerk.

The covenants provided that all lot owners would be charged a monthly assessment of $38.50 per lot with an exception for North American. As the developer, it was assessed at 25% of the normal fee.

North American went bankrupt after developing approximately twenty-five lots. Thereafter, one of the homeowners assumed the responsibilities of running the Association.

After Hallmark began purchasing vacant lots in October 1993, it entered into an agreement with the Association. Under the agreement, Hallmark was to pay only $9.75 per month per lot instead of $38.50. Hallmark built homes on the lots it purchased and then sold them. Each time Hallmark sold a house in the Westland Meadows subdivision, it requested the monthly assessment bill from the Association. Approximately seventy four bills were sent to Hallmark, all of which indicated that Hallmark owed $9.75 per month per lot.

In November 1995, the Association filed an assessment lien for $15,000 on Hallmark's last piece of property based on fines allegedly owed for property damage in the subdivision. Hallmark responded by filing this declaratory judgment action against the Association, and the Association counterclaimed for $14,920 in back monthly assessments. In its counterclaim, the Association alleged that the agreement lowering the monthly assessment fee for Hallmark was invalid.

Hallmark and the Association filed cross-motions for summary judgment. The trial court granted Hallmark's motion for summary judgment and thereby dismissed the Association's claim for alleged property damages to the subdivision. However, the court neither invalidated the assessment lien nor granted Hallmarks's motion for attorney's fees and costs.

The trial court then granted the Association's motion for summary judgment and motion for attorney's fees for the back assessment fees claim. The court denied Hallmark's motion for summary judgment regarding the same claim.

## I.

Hallmark contends summary judgment was improper as to the Association's claim for back assessment fees because there exists a genuine issue of material fact whether fees were owed. According to Hallmark, it had equitable defenses against the Association and should not have been precluded from raising them. We agree.

Summary judgment should be granted only if there is no genuine issue as to any material fact, and the burden to so demonstrate is on the movant. Appellate review of a judgment granting a motion for summary judgment is *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

A court must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether to grant a motion for summary judgment. C.R.C.P. 56(c). The nonmoving party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts. *Moffat County State Bank v. Told*, 800 P.2d 1320 (Colo.1990).

■ Protective covenants that are clear on their face should be enforced as written. *Woodmoor Improvement Ass'n v. Brenner*, 919 P.2d 928 (Colo.App.1996). In determining whether provisions of a document are ambiguous, its language must be construed in harmony with the plain, ordinary and commonly accepted meaning of the words employed and reference must be made to all provisions of the document. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978). These rules of construction are applicable to protective covenants. *See Tri–State Generation & Transmission Co. v. City of Thornton*, 647 P.2d 670 (Colo.1982); *Wilson v. Goldman*, 699 P.2d 420 (Colo.App.1985).

Here, the declaration allocated the maintenance costs for the common areas by charging assessments at a uniform rate to each lot and provided methods to alter or amend the method for calculating the assessments. Article VI, Section 1 of the Association's declaration states that:

No Owner may waive or otherwise escape personal liability for the payment of the assessments ... by asserting *any claims* against the Association, the Declarant or any other person or entity. (emphasis added)

Hallmark maintains, and we agree, that the assertion of equitable defenses does not raise a "claim." *Black's Law Dictionary* 247 (6th ed.1990) defines a "claim" as "[t]o demand as one's own or as one's right; to assert; to urge; to insist. A cause of action." Also, a "defense" is defined as "[t]hat which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks. That which is put forward to diminish plaintiff's cause of action or defeat recovery." *Black's Law Dictionary* 419 (6th ed.1990).

C.R.C.P. 8 distinguishes between claims and defenses. Claims for relief include original claims, counterclaims, cross-claims, or third-party claims. Defenses are raised in response to claims asserted. C.R.C.P. 8(a) and (b). Additionally, estoppel, laches, and any other matter constituting avoidance are affirmative defenses. C.R.C.P. 8(c) states that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense," then the pleading shall be treated as a proper designation if justice requires.

■ Because Hallmark did not bring an action against the Association, but simply

defended against the Association's claim for the back assessments, we conclude that its equitable defenses do not fall within the definition of a "claim" in Article IV, Section 1 of the declaration. Therefore, Hallmark is not precluded from raising those defenses against the Association's claim for back assessments.

■ The record reflects that Hallmark presented evidence that: (1) Hallmark and the president of the Association entered into an agreement changing the rate of assessment for Hallmark's lots; (2) Hallmark was billed on seventy four different lots at a rate of $9.75 per month per lot over a two and one half year period; and (3) the Association failed to raise the back assessment claim prior to the filing of a lien on Hallmark's last parcel in Westland Meadows subdivision.

We therefore conclude that a genuine issue of material fact exists regarding the propriety of the equitable defenses raised by Hallmark.

We reach the same conclusion as to the Association's additional argument that Art. X, Section 1 of the declaration precludes the equitable defense of ratification. That section of the declaration requires that "at least two-thirds of the First Mortgagees" give their prior written approval for a waiver of the assessments.

Although that section on its face does seem to require the consent of the lenders to make a change in the assessments, we find no indication in the record that this issue was raised by the Association in the trial court.

In addition, we cannot determine on this record whether there was compliance by the Association and/or the lenders. Accordingly, there are genuine issues of material fact to be resolved regarding the applicability of this section to the instant case.

In summary, we conclude that the summary judgment entered in favor of the Association cannot stand. Given this conclusion, it follows that the award of attorney's fees and costs in favor of the Association on its claim for back assessments also must be reversed.

## II.

Hallmark next contends the trial court erred when it failed to invalidate the Association's assessment lien premised upon its claim for property damages. We conclude that remand is required.

The Westland Meadows subdivision is a common interest community subject to the Colorado Common Interest Ownership Act, § 38–33.3–101, et seq., C.R.S.1998. *See* § 38–33.3–117, C.R.S.1998 (listing sections which apply to common interest communities created before July 1, 1992). Under § 38–33.3–316, C.R.S.1998, a statutory lien is created for any assessment levied or fine imposed against an owner.

It is unclear from the record whether the Association's assessment lien was premised upon both its claim for property damages and its claim for back assessments. It appears the claim for back assessments was not raised until after Hallmark contested the validity of the assessment of the lien, and thus, the lien may have only been based on the claim for property damages.

As noted earlier, we are reversing the judgment in favor of the Association insofar as it was premised on the Association's claim for back assessments and remanding for further proceedings. However, the trial court's order of August 26, 1997, states that: "[the Association] has failed to establish a triable issue of fact" and "[Hallmark's] Motion for Summary Judgment regarding its liability to [the Association] for damages or street signs is hereby GRANTED."

Because the trial court ruled in favor of Hallmark with respect to alleged property damages, it also should have invalidated the Association's assessment lien insofar as it was premised upon a claim for property damages.

Therefore, on remand the trial court must determine whether the assessment lien was premised solely on the claim for property damages, or whether it was also premised on the claim for back assessments.

## III.

Hallmark also contends the trial court erred in failing to grant its motion for attorney's fees and costs. We agree.

Section 38–33.3–123(1), C.R.S.1998 provides that:

"[F]or *each claim,* including but not limited to counterclaims, cross-claims, and third-party claims, in any legal proceeding to enforce the provisions of this article or of the declaration, bylaws, articles, or rules and regulations, the *court shall award to the party prevailing* on such claim the prevailing party's reasonable collection costs and attorney fees and costs incurred in asserting or *defending the claim.*" (emphasis added)

Hallmark was the prevailing party on the Association's claim for an assessment lien based on property damages. Therefore, it was entitled to attorney's fees and costs for that aspect of this case. *See Pagosa Lakes Property Owners Ass'n v. Caywood,* 973 P.2d 698 (Colo.App.1998).

Hallmark also maintains it was entitled to statutory damages, attorney fees, and costs under § 38–35–109(3), C.R.S.1998. Given the above determination, we need not determine its entitlement to attorney fees and costs.

As to its claim for statutory damages, on remand the trial court shall make a finding whether Hallmark is so entitled.

## IV.

We do not address Hallmark's contention that the trial court erred in denying its motion for summary judgment on the claim for back assessments. *See Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996)(denial of a motion for summary judgment is not a final appealable order).

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judge NEY and Judge RULAND concur.