**NATIONAL FARMERS UNION PROP-
ERTY AND CASUALTY COMPA-
NY, Plaintiff–Appellee,**

v.

**ESTATE OF Donald E. MOSHER,
Defendant–Appellant.**

No. 99CA1385.

Colorado Court of Appeals,
Div. IV.

July 6, 2000.

Certiorari Denied May 14, 2001.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.1999.

Zupkus & Angell, P.C., Robert A. Zupkus, Merle M. Troeger, Denver, Colorado, for Plaintiff–Appellee.

Miller, Makkai & Dowdle, Alexander J. Makkai, Jr., Antonio Bates Bernard, P.C.,

John L. Wheeler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

In this declaratory judgment action, plaintiff, Estate of Donald E. Mosher (Estate), appeals from the summary judgment in which the trial court ruled that defendant, National Farmers Union Property and Casualty Company (NFU), was not obligated to pay Personal Injury Protection (PIP) benefits to its insured, the decedent, Donald E. Mosher.

At issue is whether, under § 10–4–707(1)(a), C.R.S.1999, of the Colorado Auto Accident Reparations Act (No Fault Act), § 10–4–701(1), et seq., C.R.S.1999, an insurer must pay PIP benefits to its "named insured" when the named insured is injured in a motor vehicle accident while operating a farm tractor that was not required to be insured under the No Fault Act.

Because we conclude that the insurer must pay the named insured PIP benefits, we reverse the judgment and remand for further proceedings.

I.

Mosher was injured, hospitalized for six weeks, and ultimately died as a result of a collision on a public highway between the farm tractor he was driving and a pickup truck driven by another individual.

Mosher was not required to procure no-fault insurance with respect to his tractor. *See* § 10–4–705, C.R.S.1999 (requiring owners of "motor vehicle[s]" to obtain no-fault insurance); § 10–4–703(7), C.R.S.1999 (defining "motor vehicle" as "any vehicle of a type required to be registered and licensed under the laws of this state ..." and, excepting from the definition of motor vehicle "any vehicle designed primarily for use off the road...."); § 42–3–104(3), C.R.S.1999 (farm tractors are not required to be registered for operation on public highways).

However, Mosher was required to, and under a policy with NFU did, provide no-fault insurance coverage with respect to ten motor vehicles he owned. The policy provid-

ed PIP benefits in compliance with the No Fault Act.

After the accident, Mosher sought PIP benefits from both NFU and the insurer of the pickup truck. After both insurance companies denied PIP benefits, NFU initiated this declaratory judgment action to determine the Estate's rights under both insurance policies.

The trial court determined as a matter of law that neither insurance company was liable to the Estate for PIP benefits. The pickup truck owner's insurance company was not liable, the court held, because Mosher was not a "pedestrian" within the meaning of §§ 10–4–707(1)(c) and 10–4–703(9), C.R.S. 1999. NFU was not liable, the court held, because "the tractor was not a described vehicle in Mr. Mosher's policy."

The Estate appeals only the court's ruling regarding its non-entitlement to PIP benefits under the NFU policy.

## II.

The Estate contends that NFU was required to pay PIP benefits even though NFU had not insured any vehicle involved in the accident. We agree.

Section 10–4–707(1), C.R.S.1999, requires PIP coverage for named insureds, resident relatives of named insureds, passengers, and pedestrians. *See Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550 (Colo.App.1998). Because the parties stipulated that Mosher was a "named insured" under the NFU policy, we are concerned here only with § 10–4–707(1)(a), which authorizes PIP benefits for:

Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction, except where the injury is the result of the use or operation of the named insured's own motor vehicle not actually covered under the terms of [the No Fault Act].

■ The interpretation of a statute is a question of law, subject to *de novo* review. *City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo.2000). Consequently, we need not defer to the trial court's determinations. *Watson v. Vouga Reservoir Ass'n*, 969 P.2d 815 (Colo.App.1998).

Our task in construing a statute must be to determine and give effect to the intent of the General Assembly. *State v. Nieto*, 993 P.2d 493 (Colo.2000).

■ To determine legislative intent, we look first to the plain language of a statute. "If courts can give effect to the ordinary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said." *State v. Nieto, supra,* 993 P.2d at 500.

■ Statutory terms must be given effect in accordance with their commonly understood and accepted meaning, unless they have acquired a technical or particular meaning in the law. *State v. Nieto, supra.* When, for example, a statute defines a term, that term must ordinarily be given its statutory meaning. "To ignore a definition section is to refuse to give legal effect to a part of the statutory law of the state." *Allstate Insurance Co. v. Schneider National Carriers, Inc.*, 942 P.2d 1352, 1355 (Colo.App.1997), *aff'd sub nom. Farmers Insurance Exchange v. Bill Boom, Inc.*, 961 P.2d 465 (Colo.1998).

■ Only if statutory terms are ambiguous need we look beyond the language of the statute and consider various extrinsic aids to determine legislative intent. *See State v. Nieto, supra; Water Rights of Park County Sportsmen's Ranch LLP v. Bargas*, 986 P.2d 262 (Colo.1999).

### A.

■ Under § 10–4–707(1)(a), PIP coverage is provided for injuries sustained by the named insured "in an accident involving any motor vehicle" but is excluded for injuries from an accident involving an uninsured "motor vehicle" of the named insured.

Initially, we must determine whether Mosher, a named insured, was injured "in an accident involving any motor vehicle." Ac-

cording to NFU, the words "any motor vehicle" must, of necessity, reference a motor vehicle described in an insurance policy issued by the named insured's insurer. We are not persuaded.

■ NFU's position is contrary to the plain language of the statute. As commonly understood, the word "any," which qualifies the phrase "motor vehicle," means without limitation or restriction. *See Colorado State Board of Accountancy v. Raisch*, 931 P.2d 498, 500 (Colo.App.1996)("The term 'any' is an inclusive term often used synonymously with the terms 'every' and 'all.' "), *aff'd*, 960 P.2d 102 (Colo.1998).

■ We are not at liberty to read additional terms into, or to modify, the plain language of a statute, *see Digital Equipment Corp. v. Industrial Claim Appeals Office*, 894 P.2d 54 (Colo.App.1995), particularly where, as here, the General Assembly has elsewhere enacted the very limitation urged upon the court. *See §§ 10–4–707(1)(c) & 10–4–703(4)*, C.R.S.1999 ("described motor vehicle"). *See also Mason v. People*, 932 P.2d 1377 (Colo. 1997)(had General Assembly intended statute to achieve a certain result, it would have employed terminology clearly expressing that intent, as it has done in other circumstances).

In our view, the first part of § 10–4–707(1)(a) requires what it says: an accident involving "any" motor vehicle, whether or not the motor vehicle was owned by the named insured, insured by the named insured, or even insured at all.

Indeed, in *Principal Mutual Life Insurance Co. v. Progressive Mountain Insurance Co.*, 1 P.3d 250, (1999)(1999 WL 718240) (*cert. granted* Colo. No. 99SC836 May 30, 2000), a division of this court, while deciding how to apply the "named driver" exclusion of § 10–4–721, C.R.S.1999, to PIP coverage, noted that, for purposes of § 10–4–707(1)(a), "a particular vehicle has relevance" not in defining the scope of PIP coverage but "in defining exclusions from the scope of coverage." We agree.

Accordingly, we conclude that, because a "motor vehicle"—the other driver's pick-up truck –was involved in the accident, PIP

coverage exists for Mosher under the first part of § 10–4–707(1)(a).

### B.

■ The remaining issue is whether Mosher was nonetheless excluded from obtaining PIP benefits under the second part of § 10–4–707(1)(a) because an uninsured "motor vehicle" of his was involved in the accident.

For purposes of § 10–4–707(1)(a), the General Assembly has explicitly defined the term "motor vehicle" to mean "any motor vehicle required to be registered and licensed for operation on the public highways of this state.... " Section 10–4–707(2), C.R.S.1999. Because Mosher's tractor is not required to be licensed and registered for operation on the public highways, *see* § 42–3–104(3), C.R.S.1999, it does not qualify as a "motor vehicle" for purposes of § 10–4–707(1)(a). And, because Mosher did not have a "motor vehicle" involved in the accident, he necessarily could not have had an uninsured "motor vehicle" involved in the accident. Consequently, under the plain language of the statute, Mosher was not excluded from obtaining PIP benefits.

NFU urges us to extend the statutory exclusion beyond owned-but-uninsured "motor vehicles" to owned-but-uninsured motorized vehicles in general. We decline to do so.

Again, we are not at liberty to modify the terms of the statute, particularly where, as here, the terms have been defined by the General Assembly. *See Allstate Insurance Co. v. Schneider National Carriers, Inc.*, *supra*.

### C.

■ We view our conclusion as consistent with the underlying purposes of the No Fault Act, which are: (1) to require registrants of motor vehicles to procure insurance covering legal liability arising out of the use of such vehicles; (2) to ensure adequate compensation to victims of automobile accidents; (3) to ensure prompt payment of benefits when due; and (4) to decrease the amount of litigation stemming from automobile accidents.

*See Mid–Century Insurance Co. v. Travelers Indemnity Co.,* 982 P.2d 310 (Colo.1999); *State Farm Mutual Automobile Insurance Co. v. Peiffer,* 955 P.2d 1008 (Colo.1998).

Ultimately, it is automobile owners, and not insurance companies, who subsidize PIP benefits through the payment of insurance premiums. Here, Mosher purchased insurance on all the vehicles he could, and he was a victim of an automobile accident. In our view, allowing Mosher to recover PIP benefits maximizes, not minimizes, insurance coverages and "ensure[s] that persons injured in automobile accidents are fully compensated for the injuries they sustain." *See Shulman v. State Farm Mutual Automobile Insurance Co.,* 998 P.2d 1, 2 (Colo.App.1999).

Consequently, we hold that the Estate was entitled to receive PIP benefits under the NFU policy, despite the fact that no vehicle insured by NFU was involved in the accident. The involvement of the other driver's pick-up truck in the accident triggered PIP coverage and PIP benefits were not excluded because the named insured, Mosher, was at the time of the accident riding a farm tractor which was itself not covered by NFU's policy. *See Harlan v. Fidelity & Casualty Co.,* 139 N.J.Super. 226, 229, 353 A.2d 151, 152 (1976)("If the named insured ... is injured as a result of an accident involving an automobile, it makes no difference if the injured person was, at the time of the accident, riding ... on a snowmobile, horse, [or] donkey....").

Accordingly, the summary judgment is reversed and the cause is remanded for entry of a judgment consistent with this opinion.

Judge MARQUEZ and Judge ROTHENBERG concur.