**K9SHRINK, LLC, a Colorado limited liability company, and Gail Clark, Plaintiffs–Appellants,**

v.

**RIDGEWOOD MEADOWS WATER AND HOMEOWNERS ASSOCIATION, Defendant–Appellee.**

**No. 10CA0640.**

Colorado Court of Appeals, Div. VII.

June 9, 2011.

March, Olive & Pharris, LLC, Stewart W. Olive, Fort Collins, Colorado, for Plaintiffs–Appellants.

Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Peter S. Dusbabek, Kimberly A. Burnham, Fort Collins, Colorado, for Defendant–Appellee.

Opinion by Judge TERRY.

Plaintiffs, K9Shrink, LLC (K9Shrink) and Gail Clark, appeal the trial court's summary judgment in favor of defendant, Ridgewood Meadows Water and Homeowners Association (Ridgewood), as well as the court's January 11, 2010 order (January order) denying declaratory and injunctive relief to plaintiffs and granting an injunction and attorney fees to Ridgewood. We affirm the judgment and order.

## I. Background

Clark is a canine behavioral psychologist who operates K9Shrink on her property. Clients of K9Shrink bring their dogs to Clark's home, where she counsels the owners to help them communicate with and train their dogs. Clark's home is subject to Ridgewood's covenants (Covenants), which were originally adopted by declarations in 1973 and 1977 and amended by a petition to the district court in 2007 (Amendments).

Plaintiffs filed this action after Ridgewood required them to cease K9Shrink's activities on Clark's property. Ridgewood had determined that K9Shrink's activities constituted commercial pet-related activity, prohibited by Part II, paragraph 5(c) of the Covenants, as amended in 2007. Plaintiffs sought a declaratory judgment that the Amendments are unenforceable, and an injunction prohibiting Ridgewood from enforcing the Amendments against plaintiffs. Ridgewood counterclaimed, seeking an injunction to prevent plaintiffs from conducting commercial pet-related activity on Clark's property.

The trial court granted partial summary judgment to Ridgewood with respect to plaintiffs' claim for declaratory judgment regarding the enforceability of the Covenants. Following trial, the trial court issued its January order, in which it determined that K9Shrink's activities violated the Covenants, and denied relief to plaintiffs. The court enjoined Clark "from operating any commercial pet-related activity," including K9Shrink, on her property. Plaintiffs appeal these rulings.

## II. Validity of Amendments to Covenants

The Amendments became effective in 2007 after the district court entered an order amending the 1973 and 1977 declarations under section 38–33.3–217(7), C.R.S.2010, of the Colorado Common Interest Ownership Act.

Plaintiffs contend the trial court erred in granting summary judgment against them on their claim for declaratory judgment. Specifically, they argue it was error for the trial court to rule that their challenge to the Amendments was barred by issue preclusion. They also argue that the district court lacked jurisdiction in 2007 to approve the Amendments. We disagree with these contentions.

We note that, because the parties have not raised or briefed the potential applicability of section 38–33.3–217(2), C.R.S.2010, which bars "action[s] to challenge the validity of an amendment" to declarations when brought more than a year after such an amendment is recorded, we do not address that statute.

### A. Issue Preclusion

We review the trial court's summary judgment ruling de novo. *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

██ Issue preclusion bars the relitigation of an issue when (1) the same issue was actually litigated in a prior proceeding, (2) the party against whom preclusion is asserted was a party to, or in privity with a party to, the prior proceeding, (3) that proceeding resulted in a final judgment on the merits, and (4) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1238 (Colo.1998).

Because plaintiffs challenge only the trial court's application of the second and fourth *Lazy Dog* factors, and only as applied to Clark, we confine our discussion accordingly.

#### 1. Party or Party in Privity

The trial court found that Clark was a party to the 2007 proceeding because she was a member of Ridgewood and had an opportunity to object to the Amendments

when they were initially proposed; she voted in favor of the Amendments; and she had a fair opportunity to litigate the issue in the 2007 district court proceeding, where she received notice and chose not to object to the court's approval of the Amendments. While we disagree that Clark's vote in favor of the Amendments is a valid factor to be considered in determining whether she was a party, we conclude that, because Clark had notice, standing, and an opportunity to be heard, the trial court did not err in ruling that she was a party to the prior proceeding.

Clark contends that under section 38–33.3–217(7), the only mechanism she had to participate in the 2007 proceeding was to file an objection with the court as one of the notified property owners. She further argues that because a district court must approve an amendment petition unless more than thirty-three percent of the property owners object, an objection from Clark alone would have been futile. We conclude that neither of these circumstances precludes Clark from having been a party for purposes of issue preclusion analysis.

Under section 38–33.3–217(7)(d), C.R.S. 2010, Clark received notice of the trial court's hearing on the petition, and was entitled to file an objection and appear at the hearing. Regardless of the number of objecting owners, the court would have been required to reject the Amendments if it was demonstrated that the statutory prerequisites under section 38–33.3–217(7) had not been met. See § 38–33.3–217(7)(e)(I), C.R.S.2010 (court shall grant amendment if it finds that the association has complied with all requirements of § 38–33.3–217(7), and other requirements of subsection (e) are satisfied); see also § 38–33.3–217(7)(a) (homeowners association's ability to petition for amendment is limited to situations where it has complied with requirements of that subsection).

■ As a property owner who received notice under the statute, Clark had standing to file, and could have filed, an objection in that earlier proceeding, raising the same defects she now contends should have precluded the district court from approving the Amendments. Under these circumstances, because Clark had notice, standing, and an

opportunity to be heard, she was a party to the proceeding in which the court approved the Amendments. See People in Interest of C.P. v. F.P., 34 Colo.App. 54, 58–59, 524 P.2d 316, 319 (Colo.App.1974) (grandmother who alleged that she was appointed children's guardian was treated as a "party" in proceedings for termination of parental rights where she had made a timely application for custody of the children; although she had no preferred status or "right" to custody, she had standing to challenge the court's custody order and was entitled to participate in the proceeding as an "interested party"); see generally § 19–1–117, C.R.S.2010 (although grandparents are not named parties to a dissolution of marriage or dependency and neglect action, they may have a limited right to appear and be heard in such actions under certain circumstances, and court orders in such actions may have a preclusive effect on their rights); see also Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 313, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (Due Process Clause requires notice and opportunity to be heard "appropriate to the nature of the case" before a person may be deprived of life, liberty or property by adjudication; service by publication was sufficient to satisfy due process as to beneficiaries of common trust fund whose addresses were unknown).

We are not persuaded to the contrary by Clark's citation to S.O.V. v. People in Interest of M.C., 914 P.2d 355, 360 (Colo.1996), and People in Interest of E.E.A. v. J.M., 854 P.2d 1346, 1348 (Colo.App.1992). Both of those cases were contested paternity actions.

In S.O.V., the minor child contended she was not bound by the jury's finding of non-paternity in the earlier paternity action, because she was not a party to that action. Addressing that contention, the supreme court relied on section 13–22–101, C.R.S. 2010, which mandates that a person be eighteen years of age or older to be competent to sue unless a guardian ad litem has been appointed to represent him or her. S.O.V., 914 P.2d at 360. The court held that the child was not a party to the paternity action, and thus was not bound by the finding of non-paternity, because she had not been

competent to sue in that action in the absence of appointment of a guardian ad litem.

In *E.E.A.*, the respondent moved to set aside a judgment declaring him the father of a minor child. He contended he was not bound by the judgment because the child had not been made a party to the action, and the trial court therefore lacked subject matter jurisdiction over the action. Although a division of this court agreed that the child was not a party to the action, it concluded the respondent could not collaterally attack the judgment. 854 P.2d at 1347.

Clark relies on the *E.E.A.* division's statement that, "to be a true party, [a] person must be competent to sue and have the right to control the proceedings, to defend, to present and cross-examine witnesses, and to appeal in his own right." *Id.* at 1348 (citing *People in Interest of R.D.S.*, 183 Colo. 89, 91, 514 P.2d 772, 773–74 (1973) (paternity statute did not recognize minor child as a party)).

Clark argues that she was not a "true party" as described in *E.E.A.*, and that issue preclusion therefore cannot bar her suit. However, the quoted language of that case has no applicability here. The decisions in *S.O.V.*, *R.D.S.*, and *E.E.A.* all depended on the special status of minor children and their incapacity to sue on their own behalf without the assistance of a guardian ad litem. No such considerations are present here. Clark had notice, standing to file an objection to Ridgewood's petition, and an opportunity to be heard at the hearing on the petition, and thus any supposed issue about whether she was a "true party" as described in the cases involving minor children is irrelevant to her status as a party for purposes of issue preclusion.

Because we conclude that Clark was a party to the 2007 proceeding, we need not analyze whether she was in privity with Ridgewood.

### 2. Full and Fair Opportunity

In *Bebo Construction Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 87 (Colo.1999), the supreme court listed the following factors as being among those used to determine whether an individual received a full and fair opportunity to litigate: whether the remedies and procedures of the first proceeding are substantially different from those in the proceeding in which issue preclusion is asserted; and the extent to which the issues in both proceedings are identical.

As pertinent to issue preclusion, plaintiffs here seek a declaratory judgment that "the 1977 Covenants were not properly amended and/or replaced by the 2007 covenants." If Clark had filed an objection in the 2007 proceeding in the district court under section 38–33.3–217, she could have brought to the court's attention any alleged defects in the Amendments and in Ridgewood's compliance with the statute, just as she seeks to do here. Thus, as to her declaratory judgment claim, the issues she seeks to litigate here and the remedies she seeks to obtain are identical to those that could have been decided in the prior proceeding.

▮ Although the proceedings in a hearing under section 38–33.3–217(7) would not be identical to those in a full civil trial, we do not perceive them as inadequate to protect Clark's interests.

> An inquiry into whether a party received a full and fair opportunity to litigate an issue must look to whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of [issue preclusion] be used to bar relitigation of that issue.

*Bebo*, 990 P.2d at 87.

▮ Clark has not demonstrated that she would have been unable to participate meaningfully in the court's hearing on the Amendments under section 38–33.3–217(7) had she filed an objection and asked to be heard. In the context of a hearing on a petition filed under this statute, where proceedings are often brief, it is sufficient that notified parties have a right to object and call to the court's attention any defects that would prevent it from properly granting the petition for approval of the Amendments as provided in section 38–33.3–217(7). We are satisfied that Clark's right to participate in the 2007 proceeding constituted a full and fair oppor-

tunity to litigate the validity of the Amendments.

## B.   Subject Matter Jurisdiction

■   Because plaintiffs are barred by issue preclusion from relitigating issues that were raised or could have been raised in the 2007 district court proceeding, they are also barred from arguing that the court lacked subject matter jurisdiction to grant Ridgewood's 2007 petition to amend. *In re Water Rights of Elk Dance Colorado, LLC*, 139 P.3d 660, 670–71 (Colo.2006); *O'Neill v. Simpson*, 958 P.2d 1121, 1123 (Colo.1998).

## III.   Interpretation of Covenant

Plaintiffs next contend the trial court erred in its interpretation of Part II, paragraph 5(c) of the Covenants.  We disagree.

■   We review the trial court's interpretation of a restrictive covenant de novo. *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860, 862 (Colo.2001).

■   "The 'dictates of plain English' must guide the interpretation of a restrictive covenant." *B.B. & C. P'ship v. Edelweiss Condo. Ass'n*, 218 P.3d 310, 315 (Colo.2009).  If the covenant is clear on its face, courts will enforce it as written. *Id.* " 'We construe covenants as a whole, keeping in mind their underlying purpose.' " *Id.* (quoting *Buick*, 21 P.3d at 862).  Only when the language of a covenant is unclear will the court resort to rules of interpretation, and in that event, " 'courts resolve all doubts against the restriction and in favor of free and unrestricted use of property.' " *B.B. & C. P'ship*, 218 P.3d at 315 (quoting *Buick*, 21 P.3d at 862).

The Covenant at issue here states: "Commercial livestock husbandry or animal processing operations are prohibited upon any lot, as are *any commercial pet-related activities, such as dog boarding kennels, catteries or commercial breeding operations.*"  (Emphasis added.)  Plaintiffs challenge Ridgewood's reading of the italicized language to prohibit operation of K9Shrink's business on the property.

The trial court was not persuaded by plaintiffs' argument that the term "such as" limit-

ed the prohibition to the specific activities listed.  It found that paragraph 5(c) unambiguously prohibited "a wide range of possible businesses, as indicated by the use of the terms 'any' and 'pet-related,' " and prohibited K9Shrink's operation on Clark's property.  We agree with this interpretation, and conclude that K9Shrink's activities clearly fall within the category of prohibited commercial pet-related activities.

We conclude that the italicized language is not ambiguous.  Therefore, we do not need to employ the panoply of available textual construction rules, review the drafting history of the Covenant, or strictly construe it to resolve doubts in favor of the free and unrestricted use of property.  *Cf.* § 38–34–103, C.R.S.2010; *B.B. & C. P'ship*, 218 P.3d at 315.

We begin our analysis by recognizing the Covenant's broad use of the term "any." " '[A]ny' connotes a lack of restriction or limitation." *Woellhaf v. People*, 105 P.3d 209, 216 (Colo.2005) (interpreting phrase "any sexual contact" as "an unlimited, nonrestrictive phrase that generally encompasses a multitude of types of sexual contacts"); *see also Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher*, 22 P.3d 531, 534 (Colo.App.2000).  "The term 'any' is an inclusive term often used synonymously with the terms 'every' and 'all.' " *Colorado State Board of Accountancy v. Raisch*, 931 P.2d 498, 500 (Colo.App.1996) (construing the word "any" as used in § 13–90–107(1)(f)(I), C.R.S.2010, to mean that the accountant-client privilege applies "without exception to all communications between the client and the certified public accountant and the accountant's employees specified in the statute"), *aff'd*, 960 P.2d 102 (Colo.1998).

We next consider what effect the phrase "such as," followed by examples, has on the preceding term, "any."  We agree with the trial court that the phrase "such as" does not limit "any commercial pet-related activity" to those activities closely analogous to the three examples given in paragraph 5(c).

This construction is consistent with the use of the word "any" in conjunction with "such as" in Colorado statutes and court rules. *See, e.g.,* § 8–43–301(14), C.R.S.2010 ("The signa-

ture of an attorney on a petition to review or brief in support thereof constitutes a certificate by the attorney … that [the petition or brief] is not interposed for *any* improper purpose, *such as* to harass, cause delay, or unnecessarily increase the cost of litigation.") (emphasis added); CRE 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by *any* means, *such as* making statements or offers of proof or asking questions in the hearing of the jury.") (emphasis added). If plaintiffs' construction of the term "any" in conjunction with the phrase "such as" were adopted, it would radically change the accepted meaning of these provisions.

Our reading is also consistent with that of courts construing federal statutes that include the phrase "such as." *See, e.g., Macon County Samaritan Mem'l Hosp. v. Shalala,* 7 F.3d 762, 767 (8th Cir.1993) (construing phrase "such as" in 42 U.S.C. § 1395ww(d)(5)(C)(ii) (1989) as " 'a phrase of general similitude' meaning *for example or of the kind specified")* (emphasis in original) (quoting *Donovan v. Anheuser–Busch, Inc.,* 666 F.2d 315, 327 (8th Cir.1981)); *Abenante v. Fulflex, Inc.,* 701 F.Supp. 296, 301 (D.R.I. 1988) (phrase "such as" in Age Discrimination in Employment Act is descriptive rather than exclusive); *In re Barker–Fowler Elec. Co.,* 141 B.R. 929, 937 (Bankr.W.D.Mich. 1992) (use of phrase "such as" in 11 U.S.C. § 362(d), allowing court to grant relief from bankruptcy stay "such as" by terminating, annulling, modifying, or continuing such stay, meant that court was authorized to grant forms of relief from stay other than those expressly enumerated).

■ The contested language of paragraph 5(c) is plain and unambiguous. The phrase, "any commercial pet-related activities," clearly refers to any activity, relating to pets, from which one attempts to earn business income. The words following "such as" are merely examples, and do not limit the broad sweep of the Covenant's land use prohibition. This construction necessarily prohibits plaintiffs' commercial pet-related activities on Clark's property.

Even if we were constrained to consider whether plaintiffs' activities were similar to "dog boarding kennels, catteries or commercial breeding operations," however, we fail to discern any remarkable difference in kind between the enumerated activities and those conducted by plaintiffs. Moreover, if only those activities of the types specifically enumerated after "such as" were prohibited, the words "any commercial pet-related activities" would be superfluous, and we must reject an interpretation that would render them superfluous. *See Leggett & Platt, Inc. v. Ostrom,* 251 P.3d 1135, 1141 (Colo.App.2010) (statutory interpretation that would render words or phrases superfluous should be rejected).

## IV. Injunctive Relief

Plaintiffs assert that the trial court erred in granting injunctive relief to prevent them from conducting commercial pet-related activities on Clark's property. We are not persuaded.

■ A party seeking a permanent injunction must show that (1) the party has achieved actual success on the merits; (2) irreparable harm will result unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause to the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Langlois v. Bd. of County Comm'rs,* 78 P.3d 1154, 1158 (Colo.App. 2003).

The trial court here found all these elements present. In its detailed and well-reasoned order, the court stated:

[I]rreparable harm will result unless the injunction is issued, as Clark will continue to operate her business contrary to the covenants and the rights and wishes of other Ridgewood members regarding the type of activity allowed in Ridgewood. This threatened harm will outweigh the harm caused to Clark, as there are other locations where she can conduct her training business. Finally, the injunction serves, rather than adversely affects, the public interest. The General Assembly, in enacting the Colorado Common Interest Ownership Act, C.R.S. §§ 38–33.3–101 to – 319, [indicated] that the activities of home-

owners associations such as Ridgewood are in the interests of the state and its citizens. Such activities necessarily include the enforcement of restrictive covenants, even though individual homeowners object and may suffer economic or other detriment because of such enforcement. *See Hallmark Bldg. Co. v. Westland Meadows Owners Ass'n,* 983 P.2d 170, 172 (Colo.App. 1999) ("Protective covenants that are clear on their face should be enforced as written.").

The trial court's findings are supported by the record and we will not disturb them.

■ Plaintiffs nevertheless argue that irreparable harm aside from the mere violation of the Covenant must be demonstrated, and was not demonstrated here. Assuming, without deciding, that a violation of the Covenant, without more, would be insufficient to support injunctive relief, we conclude that sufficient evidence was presented here to support the trial court's order. Clark's neighbors testified amply to the impediment to the enjoyment of their properties caused by plaintiffs' business activities on her property.

Although plaintiffs ask us to conclude that the neighbors were not inconvenienced, but rather that they had a personal vendetta against Clark and came to court with unclean hands, it is not our role to make such factual determinations. We do not reweigh the evidence presented to the trial court, and do not make a de novo assessment of whether a party comes to court with clean hands. *See In re Marriage of Hatton,* 160 P.3d 326, 330 (Colo.App.2007).

The record here supports the trial court's finding that the Ridgewood neighbors were irreparably harmed by plaintiffs' continuing violation of the Covenant. *See Jackson & Co. (USA) v. Town of Avon,* 166 P.3d 297, 300–01 (Colo.App.2007) (affirming injunction against property owner's use of property in violation of subdivision plat and ordinance). Because the record supports the trial court's findings as to each of the requisite elements for injunctive relief, we conclude it did not err in ordering that relief.

## V. Attorney Fees

Because of our resolution of the merits, we necessarily affirm the trial court's award of attorney fees and costs to Ridgewood as the prevailing party under C.R.C.P. 54(d); Part IV, paragraph 8 of the Covenants; and section 38–33.3–123(1)(c), C.R.S.2010. On the same basis, we also grant Ridgewood's request for attorney fees on appeal.

The summary judgment and the January order are affirmed. The case is remanded to the trial court to consider the amount of appellate attorney fees to be awarded to Ridgewood.

Judge BERNARD concurs.

Judge BOORAS concurs in part and dissents in part.

Judge BOORAS concurring in part and dissenting in part.

I agree with the majority that the Amendments were validly adopted and concur in that portion of the opinion. However, I think the language of paragraph 5(c) is ambiguous, and would apply the rule requiring strict construction of restrictive covenants to conclude that the Covenants did not ban plaintiffs' activities on Clark's property. Therefore I must respectfully dissent.

The term we now interpret—"any commercial pet-related activities, such as dog boarding kennels, catteries or commercial breeding operations"—is, to my mind, quite unclear. I disagree with the majority's interpretation of this phrase in two respects. First, I do not agree that the term "any" is uniformly understood to be widely inclusive or "without limitation," and second, I do not agree that the phrase "such as dog boarding kennels, catteries, or commercial breeding operations" should be dismissed as mere examples.

Although the term "any" has been frequently construed as an all-inclusive term, *e.g., Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher,* 22 P.3d 531, 534 (Colo. App.2000), it has also been described as a word having "a diversity of meaning and [which] may be employed to indicate 'all' or 'every' as well as 'some' or 'one' and its

meaning in a given statute depends on the context and subject matter of the statute." *Black's Law Dictionary* 86 (6th ed. 1990), *cited in Mgmt. Council of Wyo. Leg. v. Geringer*, 953 P.2d 839, 844–45 (Wyo.1998) (concluding that "any" can refer to a restricted class, based on the context of the provision in which the word "any" is used).

The term "such as," followed by examples, produces further ambiguity. I would agree with the trial court and the majority that the phrase "such as" does not limit "commercial pet-related activity" to the three explicit examples given in paragraph 5(c). Nonetheless, the phrase has often been used restrictively to indicate that the term being defined includes items that are similar to those listed as examples. *E.g., Bd. of Adjustment v. Levinson*, 244 S.W.2d 281, 282–83 (Tex.Civ. App.1951) (defining "such as" to mean "like or similar to the classification or kinds named"); *Charles Behlen Sons' Co. v. Ricketts*, 30 Ohio App. 167, 164 N.E. 436, 439 (1928) (construing "such as" to mean "similar to"). One court recognized that the meaning of "such as" can range from the broad "general similitude" to the more restricted "not other or different," *Brooklyn Union Gas Co. v. McGoldrick*, 270 A.D. 186, 59 N.Y.S.2d 243, 248 (N.Y.App.Div.1945), *aff'd*, 298 N.Y. 536, 80 N.E.2d 669 (1948), indicating that even the least restrictive use of the term "such as" indicates some limitation to similar words or items.

The majority notes caselaw holding that "such as" is "a phrase of general similitude." *Macon County Samaritan Mem'l Hosp. v. Shalala*, 7 F.3d 762, 767 (8th Cir.1993). This means that "such as" indicates similarity— that the preceding term's definition includes "other matters *of the same kind*" as those listed examples. *Donovan v. Anheuser– Busch, Inc.*, 666 F.2d 315, 327 (8th Cir.1981) (emphasis added). True, there may be circumstances in which the examples following "such as" are intended as mere examples that in no way restrict the meaning of the preceding term. However, I cannot agree that examples following the phrase "such as" are always rendered meaningless by the presence of the word "any." On the one hand, paragraph 5(c), when read in a widely

inclusive manner as the majority does, would prohibit a wide range of activities including such things as filming dog training videos using Clark's own pets for demonstrations, writing books about dog training, and even knitting dog sweaters for sale over the internet. On the other hand, paragraph 5(c) can be read narrowly to restrict only activities similar to those set out after "such as."

Given that there could be more than one possible meaning to both terms "any" and "such as [various examples]" I would label paragraph 5(c) ambiguous. *See Allen v. Reed*, 155 P.3d 443, 445 (Colo.App.2006). Therefore, I would apply the primary rule in construction of restrictive covenants and resolve doubts about the Covenants' meaning "against the restriction and in favor of free and unrestricted use of property." *Gleneagle Civic Ass'n v. Hardin*, 205 P.3d 462, 469 (Colo.App.2008). Given this mandate, I would interpret the "any" in paragraph 5(c) to modify all the words that follow it, prohibiting only—and all of—those activities that are similar to "dog boarding kennels, catteries, or commercial breeding operations."

While the majority discerns no difference between the activities listed in paragraph 5(c) and plaintiffs' business, I do. Kennels, catteries, and commercial breeding operations involve the constant presence of multiple animals on the property and the housing of animals not supervised by individual owners. Plaintiffs' business, in contrast, involves the limited presence of animals not belonging to Clark, with each individual animal supervised by its owner. Colorado's Pet Animal Care and Facilities Act makes a similar distinction. § 35–80–102(11), C.R.S.2010 (defining "[p] et animal facility" as a place "used for the keeping of pet animals" for things like breeding and boarding); § 35–80–103(2)(d), C.R.S. 2010 (excluding "[a]ny pet animal training facility where the pet animal owner or such owner's designee, other than a training facility operator, is present during the duration of the animal's stay" from the scope of the Act).

Furthermore, it does not appear that the restriction on commercial pet-related activities was simply intended to limit the presence of animals on the lots generally. The remaining Covenants permit residents to

keep multiple pets on the property, restricting their presence only to the extent that the pets "create a nuisance" or are so numerous that they cannot "be maintained in a healthy condition without presenting a health or safety hazard to the owners, keepers, or others." The Covenants also contain a provision that a home business shall not create a neighborhood nuisance—a provision the trial court found that plaintiffs did not violate. These provisions, when read together with paragraph 5(c), lead me to believe that the paragraph prohibiting commercial pet-related activities was aimed at a more specific type of business than simply those that invite multiple animals onto the property.

Evidence of the parties' intent in this case supports my interpretation. *See* 20 Am. Jur.2d *Covenants, Conditions, and Restrictions* § 13 (2010) ("[I]f an ambiguity is found in a covenant, a court moves beyond the four corners of the agreement and ascertains the intent of the parties in light of the instrument as a whole and the surrounding circumstances." (footnote omitted)). Because the trial court did not determine until the close of trial that the provision was unambiguous, all parties had opportunity and incentive to present evidence of the drafters' intent. Plaintiffs presented evidence that Ridgewood members sought specifically to prohibit "boarding kennels, the catteries, [and] breeding operations such as puppy mills." The same witness testified that county regulations guided the drafting process, and a representative of the county testified that plaintiffs' business was not of the kind that would require special review by the county in order to operate, whereas the business types listed in paragraph 5(c) would. I cannot see where in the record Ridgewood rebutted this evidence or even posited that the Covenants' drafters had a different intention.

Although the majority identifies several statutes that have employed a combination of "any" and " 'such as,' followed by examples," I do not think my interpretation of the Covenants puts the effect of those statutes in jeopardy. Restrictive covenants are treated differently from statutes when their meaning is unclear, and require strict construction. *See Gleneagle Civic Ass'n v. Hardin,* 205 P.3d 462, 469 (Colo.App.2008). Furthermore, in the absence of a direct challenge to the statutes listed by the majority, now is not the time to determine whether they should be construed narrowly or broadly.

Although plaintiffs urge us to apply the interpretive canon of *noscitur a sociis, see Babbitt v. Sweet Home Chapter of Cmtys. for Great Ore.,* 515 U.S. 687, 694, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) ("a word is known by the company it keeps"), application of that or of the closely related *ejusdem generis* is not necessary in this case. These canons are an interpretive tool of last resort and do not control where we have other evidence of the drafters' intent. *Fisher v. Cmty. Banks of Colo., Inc.,* —— P.3d ——, —— (Colo.App. 2010) *(cert. granted* Mar. 14, 2011) (citing 11 Richard A. Lord, *Williston on Contracts* §§ 32.1 & 32.7, at 390–91 & 434–39 (4th ed. 1999)).

I would reverse the injunction prohibiting plaintiffs from continuing to operate their business out of Clark's home and remand the case to the trial court for reconsideration of plaintiffs' claims and attorney fees.