23CA1664 Beck v Banker 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1664
Larimer County District Court Nos. 19CV30718 & 21CV30918
Honorable Stephen J. Jouard, Judge

Darrell L. Beck, III,

Plaintiff-Appellee and Cross-Appellant,

v.

John G. Banker and Kim Lankford Banker,

Defendants-Appellants and Cross-Appellees.

JUDGMENT AND ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Jung & Associates, P.C., Ronald D. Jung, Boulder, Colorado; Hutchinson Black and Cook, LLC, Meghan C. Hungate, Matthew A. Simonsen, Boulder, Colorado, for Plaintiff-Appellee and Cross-Appellant

Snell & Wilmer L.L.P., James D. Kilroy, Nathan K. Davis, Carissa L. Pryor, Denver, Colorado, for Defendants-Appellants and Cross-Appellees

¶ 1	Defendants, John G. Banker and Kim Lankford Banker, whose property is burdened by an easement giving plaintiff, Darrel L. Beck III, the right to use the road that crosses their property, appeal the district court's judgment prohibiting them from building an archway with a gate (the gate) on the road. They also appeal the district court's postjudgment order prohibiting them from building an archway without a gate (the archway). Beck cross-appeals the postjudgment order, in which the district court denied his request for attorney fees. We affirm the judgment on narrower grounds and the order on different grounds than those relied on by the district court.

## I.	Background

¶ 2	The following facts are largely undisputed.

¶ 3	Pinwheel Ranch Road (the road) provides access to the Bankers' and Beck's properties. The Bankers own land that is traversed by a portion of the road, and Beck has an easement to use the road as a means of ingress and egress to and from his property.

¶ 4	For several years, the Bankers and Beck have been litigating disputes over the road. In this case, citing the need for increased

security, the Bankers wished to build a lockable gate on the road, the code for which would be given to Beck and the other neighbors along the road. The Bankers filed a complaint asking the district court for a declaratory judgment that the Bankers had the authority to construct the gate.[1]

¶ 5 Beck filed counterclaims asking the court to enforce a pre-existing permanent injunction preventing the Bankers from blocking or interfering with Beck's use of the road and alleging the Bankers were in contempt of court for violating orders arising out of prior easement-related litigation.

¶ 6 In their trial brief, the Bankers expounded on their request for declaratory judgment, explaining that the archway would be two vertical support pillars placed approximately two feet outside of the easement on either side of the road. The pillars would be connected by a thirteen-and-a-half-foot high horizontal crosspiece and the gate would be installed between the support pillars. This structure

---

[1] The Bankers filed their complaint for declaratory judgment in Larimer County Case No. 21CV30918, but that case was eventually consolidated with Larimer County Case No. 19CV30718, a pre-existing case in which Beck had sued the Bankers and several defendants over related disputes involving his access to his property.

would be labeled as the entrance to the Bankers' property and identify the road as private.

¶ 7     Beck opposed the gate under two legal theories.  He argued that the proposed structure would unreasonably interfere with his easement to use the road.  And he sought to enforce a use-restriction covenant (the covenant), which prohibits building structures on the portion of the road where the Bankers proposed to build one of the support pillars for the archway.

¶ 8     After a bench trial, the district court issued findings of fact and conclusions of law.  The court agreed with Beck on both theories, concluding that the gate would unreasonably interfere with Beck's easement and Beck could enforce the covenant prohibiting structures on the property abutting the road.  The district court ruled against Beck on his counterclaim for contempt.

¶ 9     Both parties submitted post-trial motions.  Beck sought an award of costs and attorney fees.  And the Bankers filed a motion under C.R.C.P. 59, asking the district court to separately analyze whether the archway was allowed and to amend its judgment to allow the Bankers to build the archway.  The district court denied both motions, determining that Beck was not the prevailing party

and the Bankers had not demonstrated any "factual or legal error upon which to amend the existing judgment."

## II. The Easement

¶ 10 The Bankers argue that the district court erred in finding the proposed gate and archway would unreasonably interfere with Beck's easement to use the road. We discern no error.

### A. Standard of Review

¶ 11 Whether an action unreasonably interferes with a party's easement is a question of fact. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 317 (Colo. App. 1996) (*Lazy Dog I*). Accordingly, we review for clear error, and "we shall not disturb the findings of the trial court if supported by the evidence." *Id.* "We may not reweigh evidence or substitute our judgment for the trial court's." *Franklin Drilling & Blasting Inc. v. Lawrence Constr. Co.*, 2018 COA 59, ¶ 32 (quoting *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24).

### B. Analysis

¶ 12 "[T]he owner of [a] servient estate may make any use of the burdened property that does not unreasonably interfere with the enjoyment of the easement by its owner for its intended purpose."

*Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1238 (Colo. 1998) (*Lazy Dog II*). "[T]he interests of both parties must be balanced in order to achieve due and reasonable enjoyment of both the easement and the servient estate." *Id.*

### 1. The Gate Would Unreasonably Interfere with Beck's Use of the Easement

¶ 13    When considering whether a gate across a road would unreasonably interfere with the dominant estate's easement, courts consider four factors: "(1) the purpose for which the grant was made; (2) the intention of the parties given the circumstances surrounding the grant; (3) the nature and situation of the property; (4) the manner in which the easement was used." *Lazy Dog I*, 923 P.2d at 317. The district court appropriately analyzed each factor and its findings as to each were supported by the record.

¶ 14    First, the language of the easement demonstrates that the intent of the parties was for the road to provide access to the properties along it. The Bankers do not dispute this finding.

¶ 15    Second, the district court found there was insufficient evidence to determine whether the parties who created the easement had any intention to permit or prohibit installation of a

5

gate along the road. While the Bankers argue that the road previously had gates, those gates were eventually taken down. Moreover, there was evidence that some of the gates had historically caused discord among the neighbors.

¶ 16    Third, the road is situated alongside several properties, most of which, including the Bankers' property, have their own locked gates at the entrance to their property. While some of the property owners testified to an increase in trespassers using the road, the Bankers have never called law enforcement about alleged trespassers. Furthermore, as noted, there were numerous disputes between neighbors about gates previously located on the road.

¶ 17    Beck testified that the gate would delay and disrupt his and his guests' ability to use the road. The district court was unpersuaded by the Bankers' argument that their desire to build the gate was motivated by security concerns. Instead, the district court found that the proposed gate was simply another attempt to control Beck's use of and access to the road.

¶ 18    Fourth, the road has been used to access the properties that run along it. The Bankers do not dispute this finding.

¶ 19 The district court's finding that the gate would unreasonably interfere with Beck's easement because it would inhibit his use of the road has record support. The Bankers' arguments to the contrary essentially ask us to reweigh the evidence, which we cannot do. *Franklin Drilling*, ¶ 32. We thus discern no error in the district court's determination that the proposed gate would unreasonably interfere with Beck's use of the easement.

### 2. The Archway Would Unreasonably Interfere with Beck's Use of the Easement

¶ 20 In their post-trial motion, the Bankers asserted that the district court failed to consider its alternative request to build just the archway without the gate. The district court denied the motion, saying, "the Court fails to find any basis to reconsider its findings, conclusions, or judgment as to some sort of a gate, entry structure, or sign." Reviewing the denial of the motion for an abuse of discretion, *see Top Rail Ranch Ests., LLC v. Walker*, 2014 COA 9, ¶ 74, we find none.

¶ 21 Beck testified that the proposed height of the archway would be too low for his tree-moving equipment. The district court agreed and found the height of the structure would unreasonably interfere

7

with Beck's use of his property. The Bankers contend that they would accommodate any height restriction necessary to avoid impeding Beck's access. However, the district court found that the Bankers' proposed plan for the archway would not accommodate Beck's equipment.

¶ 22 The Bankers further contend that the structure would be built to accommodate the maximum height for legal vehicles and that Beck had no right to use a vehicle above the lawful height. The record indicates otherwise. Beck testified that this equipment is classified as an agricultural vehicle and therefore exempt from Commercial Vehicle Regulations. The district court agreed.

¶ 23 Finally, the Bankers offered to present alternative designs to the structure. But the district court declared, and we agree, that it is not tasked "to select an array or aid in a development of a design that may, or may not[,] . . . avoid conflicts."

¶ 24 In the judgment, the district court considered Beck's concerns regarding the height of the proposed structure and whether it would impede Beck from using the equipment he uses. Thus, the Bankers' postjudgment assertion that the district court did not consider the archway alone is belied by the record. Moreover, the

record supports the district court's findings regarding the proposed archway's height interfering with the passage of Beck's equipment. Consequently, the district court did not abuse its discretion by declining to amend its findings or conclusions.

## III.   The Covenant

¶ 25    The Bankers also argue that the district court erred by permitting Beck to enforce the covenant. Given our resolution of the easement issue, we would normally not need to address this alternate ground for prohibiting the Bankers from building the gate and archway. However, because Beck's claim for attorney fees rests on whether he has standing to enforce the covenant, we must consider this question.

¶ 26    The Bankers contend that Beck does not have a right to enforce the covenant because he was neither a party to it nor a beneficiary of it. We agree.

### A.    Additional Background

¶ 27    The Bankers sought to build one of the support pillars for the archway on land that is burdened by a covenant. The covenant at issue was created by Craig B. Van Cleve and Leslie Larson, David Brockway, Richard A. Graves, and Greg Stanley Jacobson and

Adele Kay Jacobson (collectively, the predecessors). The predecessors swapped land to resolve a boundary dispute. In a quitclaim deed used to convey the land swap (the land swap deed), Van Cleve and Larson conveyed land to the Jacobsons, Graves, and Brockway. The land swap deed also created a use-restriction covenant that prohibited building non-fence structures on the property conveyed in that land swap:

> No building or other structure, except fences, may be constructed upon the property being conveyed hereby. This restriction shall be a covenant for the benefit of the owner of the property legally described as . . . ("the Adjacent Property"). This restriction shall be a covenant running with the land and shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, and assigns. Enforcement of this covenant shall be by appropriate proceeding at law or in equity against those persons or entities violating or attempting to violate this covenant . . . . Such judicial proceeding may be prosecuted by the then record owner or owners of the Adjacent Property.[2]

---

[2] The land swap deed was subsequently replaced by another deed correcting the conveyed property's legal description, but the quoted language in the covenant remained the same.

¶ 28    At the time of the covenant's creation and at the time of trial, Van Cleve and Larson owned the Adjacent Property. At some point, Brockway sold some of his property to Beck, some to the Bankers, and the remainder to Christopher Nowak. Beck's property does not include the Adjacent Property or the property that was conveyed by the land swap deed. In particular, the land on which the Bankers proposed building one of the archway's pillars and that is burdened by the covenant Beck sought to enforce — is now owned by the Bankers.

## B.    Standard of Review

¶ 29    We review de novo the interpretation of a restrictive covenant. *K9Shrink, LLC v. Ridgewood Meadows Water & Homeowners Ass'n*, 278 P.3d 372, 377 (Colo. App. 2011). We interpret a covenant according to the language's plain and ordinary meaning, and "[i]f the covenant is clear on its face, [we] will enforce it as written." *Id.* We construe a covenant as a whole, "seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 23 (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009)).

## C.    Analysis

¶ 30    Beck is not entitled to enforce the covenant. The plain language of the covenant states that it is "for the benefit of the owner of the property legally described as . . . ('the Adjacent Property')." The covenant also states that it is enforceable by the "owners of the Adjacent Property." Because Beck does not own the property, he is not entitled to enforce the covenant. *Rooney v. Peoples Bank of Arapahoe Cnty.*, 513 P.2d 1077, 1079 (Colo. App. 1973) (holding plaintiff could not enforce neighboring subdivision's covenant).

¶ 31    Beck counters by pointing to the covenant's language saying, "[t]his restriction shall be a covenant running with the land and shall be binding upon and inure to the benefit of the parties hereto and their . . . assigns." He argues that because he bought his property from Brockway, who was a party to the land swap deed, he is an assignee of Brockway and thus a beneficiary of the covenant with enforcement rights.

¶ 32    Beck's reliance on this language is misplaced. Read in the context of the entire use restriction provision, the language means that the covenant is binding on the parties receiving the swapped

land (and their assigns) and inures to the benefit of the parties retaining ownership of the Adjacent Property (and their assigns). Beck's (and the district court's) contrary interpretation would render meaningless the more specific language that the covenant is for the benefit of the owners of the Adjacent Property, who are the only parties authorized to prosecute any judicial proceeding to enforce the covenant. We will not interpret the covenant in that way. *See Pulte Home Corp.,* ¶ 23.

¶ 33 Beck further argues that the sentences mentioning the Adjacent Property are illustrative and not exclusive. This argument fails for two reasons. First, it does not explain why Beck should be able to enforce a covenant on land he does not own. Second, the plain language of the covenant suggests that the references to the Adjacent Property are exclusive. The first reference to the Adjacent Property says "[t]his restriction shall be a covenant for the benefit of the owner of the property legally described as . . . (the 'Adjacent Property')" — which in no way suggests that any other property owner is a beneficiary of the covenant. The lack of the word "only" does not, as Beck suggests, mean that we can read in other parties who are not explicitly mentioned as being benefitted by or

empowered to enforce the covenant. Rather, given that two of the eight sentences in the covenant exclusively mention the Adjacent Property, we consider the lack of language like "such as," "and others," or "etc.," to be indicative of an intent to benefit and give enforcement rights only to the owners of the Adjacent Property.

¶ 34    As we interpret the covenant, Beck is not an assignee of Brockway *for purposes of the covenant.* As noted, the land Beck bought from Brockway was not the parcel conveyed to Brockway in the land swap. Similarly, Beck does not own and was not assigned any ownership interests in the Adjacent Property. In other words, while the covenant may run with the land that it burdens, it does not run to Beck's wholly unrelated land.

¶ 35    Said yet another way, though Brockway was an original party to the land swap, he was never an "owner[] of the Adjacent Property," and thus did not have the right to enforce the covenant. Therefore, Brockway could not have assigned any such rights to Beck.

¶ 36    Beck is not able to invoke the covenant to prevent the Bankers' construction of the archway and gate. The district court, therefore, erred by ruling in Beck's favor on this issue.

¶ 37    As noted, this conclusion does not result in reversal of the judgment because the district court's other basis for barring the construction — unreasonable interference — was not erroneous. However, because we conclude that Beck was not entitled to enforce the covenant, we reject his claim that he is entitled to attorney fees under the covenant's fee-shifting provision. We therefore affirm the district court's postjudgment order denying that request, albeit on different grounds. *See Deutsche Bank Tr. Co. Ams. v. Samora*, 2013 COA 81, ¶ 38 ("An appellate court may affirm the trial court's ruling based on any grounds that are supported by the record.").

## IV.    Disposition

¶ 38    The judgment and order are affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.